UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PAUL S. FOTI; ZOVINAR ASHJIAN, on behalf of
himself and all others similarly situated; CHRIS
ZEBRO, on behalf of himself and all others similarly
situated,

                              Plaintiffs,

      -v-

NCO FINANCIAL SYSTEMS, INC.,

                          Defendant.

Case No. 04-CV-707 (KMK)

OPINION AND ORDER

---

APPEARANCES:

Michael M. Cohen, Esq.
Law Offices of Michael M. Cohen
New York, NY
Yitzchak E. Cohen, Esq.
Law Offices of Yitzchak E. Cohen
Riverdale, NY
*Counsel for Plaintiffs*

David Israel, Esq.
Sessions, Fishman & Nathan, L.L.P.
New Orleans, LA
Kevin Barry McHugh, Esq.
Fiedelman Garfinkel & Lesman
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

      Plaintiffs Paul S. Foti, Chris Zebro, and Zovinar Ashjian (collectively Plaintiffs) bring

this action, on behalf of themselves and all other persons similarly situated, alleging that

Defendant NCO Financial Systems, Inc. (Defendant or "NCO"), a debt collector, violated the

Fair Debt Collection Practices Act ("FDCPA" or "Act"), 15 U.S.C. § 1692 *et seq.*  Specifically,

Plaintiffs allege violations of the FDCPA based on two communications:  (1) a January 18, 2004 pre-recorded message; and (2) a January 26, 2004 telephone conversation.  NCO moves to dismiss Counts One and Two of the First Amended Class Action Complaint ("Amended Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).[1]  For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[2]

## I.  Background

For the purpose of this Motion, the Court will take as true the facts alleged in the Amended Complaint, which are as follows.  On January 1, 2004, Foti received a collection letter ("January 1 Letter") from NCO seeking to collect a debt of $78.75 on behalf of Columbia House Company.  (Am. Compl. ¶ 21, Ex. A)  The January 1 Letter provides, in pertinent part:

---

[1] While the Motion is styled as one pursuant to Fed. R. Civ. P. 12(c), as discussed below, the Court construes the Motion as one made pursuant to Fed. R. Civ. P. 12(b)(6) since NCO has not filed an answer to the Amended Complaint.

[2] The Amended Complaint contains a number of "Class Action Allegations."  (Am. Compl. ¶¶ 42-64)  Class certification, pursuant to Fed. R. Civ. P. 23, has not yet taken place. This Court, however, may properly consider a motion to dismiss prior to resolving the issue of class certification.  *See Schweizer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998) ("[The Supreme Court's decision in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)] makes clear that the determination of whether a class meets the requirements of Rule 23 must be performed separately from the determination of the merits, but it does not require that class certification be addressed first.  There is nothing in Rule 23 which precludes the court from examining the merits of plaintiff's claims on a proper Rule 12 motion to dismiss or Rule 56 motion for summary judgment simply because such a motion precedes resolution of the issue of class certification. The decision to award summary judgment before acting on class certification was well within the discretion of the district court, particularly since [plaintiff] never moved to certify the purported class.") (internal citations and quotations omitted).  Here, consideration of the Motion to Dismiss at this time is appropriate, particularly given the considerable "expense and . . . time of dealing with what is currently requested as a nationwide class that would include tens of millions of people" when certain issues may be able to be resolved as a matter of law.  (Tr. 22)

The named creditor[3] has placed this account with our office for collection.  It is important that you forward payment in full.

If you choose not to respond to this notification, we will assign your account to a collector with instructions to collect the balance.

. . . .

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office [sic] in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

. . . .

This is an attempt to collect [illegible] debt.  Any information obtained will be used for that purpose.  This is a communication from a debt collector.

(Am. Compl. Ex. A)   Plaintiffs do not contest that this letter complied with the FDCPA requirements (Am. Compl. ¶ 22), and, in particular, the requirement that a debt collector's initial communication provide the debtor with notice of a thirty-day validation period.  (Am. Compl. ¶ 23)

Plaintiffs' allegations stem from two subsequent communications.  First, Plaintiffs contend that on or about January 18, 2004, NCO called Foti's residence and left the following uniform, pre-recorded, and standardized message ("January 18 Pre-Recorded Message"):[4]

Good day, we are calling from NCO Financial Systems regarding a personal

_____

[3] The upper right hand portion of the January 1 Letter indicates "Creditor: Columbia House Company."  (Am. Compl. Ex. A)

[4] Plaintiffs allege the call was "dialed with the assistance of a computer-dialing device." (Am. Compl. ¶ 25)

business matter that requires your immediate attention.  Please call back 1-866-701-1275 once again please call back, toll-free, 1-866-701-1275, this is not a solicitation.

(Am. Compl. ¶ 27, Ex. B) (emphasis by Plaintiffs omitted)  Plaintiffs allege that this message was "communicated to millions of other debtors, including members of the Class."  (Am. Compl. ¶ 26)

Second, Plaintiffs contend that on January 26, 2004, Foti called the toll-free number (referenced in the message outlined above), and had the following conversation with an NCO agent ("January 26 Conversation"):

| | |
|---|---|
| NCO Agent: | Good afternoon, NCO, can I help you? |
| Paul Foti: | Yes, hi, I am responding to a message that I got on my machine |
| NCO Agent: | OK, and what's your telephone number that we dialed? |
| Paul Foti: | Uh, 845-223-3954 |
| NCO Agent: | OK, just bear with me here for one moment . . .  OK, we are looking for a Paul Foti |
| Paul Foti: | Yes |
| NCO Agent: | Is this him?  OK sir what we are calling in regards to is |
| Paul Foti: | What, what[5] I was away, when did you call me? |
| NCO Agent: | I have no idea |
| Paul Foti: | What do you mean you have no idea? |
| NCO Agent: | I have no idea sir, I personally did not phone you |
| Paul Foti: | OK can you transfer me to the person that called me, let me see if I need to speak to a certain person |
| NCO Agent: | It doesn't matter who called you sir, [chuckle] it doesn't matter, a whole bunch of agents get assigned to call millions of people a day it doesn't matter who called you |
| Paul Foti: | OK, OK |
| NCO Agent: | OK, you're Paul Foti? |
| Paul Foti: | Yes |
| NCO Agent: | OK, sir, what we are calling in regard to is two outstanding Columbia House accounts, one's for thirty eight dollars and thirteen cents and the other is for seventy eight dollars and seventy |

---

[5] The "what, what" is omitted from Plaintiffs' transcription of the call (Am. Compl. ¶ 31), but can be heard on the recording of the conversation annexed to the Amended Complaint.  (Am. Compl. Ex. C)

4

|  | five cents.  They've both been sent here into collections by Columbia House. |
| Paul Foti: | OK, it said, the message was that it required my immediate attention, what does that mean? |
| NCO Agent: | And it does.  Because you have accounts sitting here in collections and it's not a solicitation and the problem is, sir, that if you don't take care of this, we call up to four times a day. |
| Paul Foti: | You could you would call me you could call me up to four times a day? |
| NCO Agent: | Yeah, we could call you very often. |
| Paul Foti: | If I don't take care of it. |
| NCO Agent: | Yes. |
| Paul Foti: | So, so what do you need me to do today? |
| NCO Agent: | Pay the account |
| Paul Foti: | Excuse me? |
| NCO Agent: | Pay the account |
| Paul Foti: | Pay the account |
| NCO Agent: | Pay the account |
| Paul Foti: | OK, uh what what if I don't want you to call my house anymore? |
| NCO Agent: | eh you've got to pay the account |
| Paul Foti: | and what if I don't want to pay the account |
| NCO Agent: | you've gotta pay the account in order to stop that sir, the legislation governs us to call for the purpose of collecting this debt until it's paid in full |
| Paul Foti: | and what if, and what if I tell you to stop calling me? |
| NCO Agent: | that means nothing to us |
| Paul Foti: | that means |
| NCO Agent: | by law, it means nothing to us |
| Paul Foti: | OK.  Alright, why don't you give me the, the uh information where I need to send the money |
| NCO Agent: | OK, you got a pen handy? |
|  | [beep — incoming call] |
| NCO Agent: | You got a beep? |
| NCO Agent: | Are you there sir? . . . really. |

(Am. Compl. ¶ 31, Ex. C) (emphasis by Plaintiffs omitted)

The Amended Complaint also alleges that "Plaintiffs Zebro and Ashjian had substantially similar experiences as did Foti and were subjected to additional deceptive and harassing collection practices."  (Am. Compl. ¶ 33)  For purposes of this Motion, however, the Court

examines only the question of whether the allegations as they relate to the January 18 Pre-Recorded Message and the January 26 Conversation survive the Motion to Dismiss.  The question of whether the "substantially similar experiences" of Zebro and Ashjian are such that they fall within the same class of plaintiffs as Foti need not be resolved at this time.

Moreover, the Amended Complaint indicates that "Ashjian (i) challenged — in writing — the alleged debt NCO was retained to collect, and (ii) made repeated written requests to NCO that they cease any and all collection communications" (Am. Compl. ¶ 36); and that "NCO . . . did not heed Ashjian's written requests to cease communications" (Am. Compl. ¶ 37), or "acknowledge Ashjian's written challenges of the debts NCO was attempting to collect and, in fact, continues to attempt to collect." (Am. Compl. ¶ 38)  These allegations relate to Count Three, discussed below, which is not the subject of the present dispute.  Rather, this Motion focuses on the two specific communications outlined above — (i) the January 18 Pre-Recorded Message and (ii) the January 26 Conversation.

Based on the above correspondence, Plaintiffs allege several violations of the FDCPA.[6] First, Count One claims (on behalf of the entire class) NCO violated 15 U.S.C. § 1692g, requiring, *inter alia*, the debt collector to inform the consumer/debtor that s/he is entitled to a thirty-day validation period in which s/he can indicate that any portion of the debt is disputed,[7]

_____

[6] For purposes of this Motion, there does not appear to be any dispute that Plaintiffs are "consumer[s]" within the meaning of 15 U.S.C. § 1692a(3), and that NCO is a "debt collector" as defined in 15 U.S.C. § 1692a(6).  (Am. Compl. ¶¶ 66-67, 75-76)

[7] Section 1692g provides:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer

6

and § 1692e(10), prohibiting false and deceptive practices.[8]  Specifically, Plaintiffs contend that

"NCO contacted Plaintiffs, and members of the Class, within the thirty-day validation period and

confused and/or overshadowed Plaintiffs', and members of the Class's, thirty-day validation

has paid the debt, send the consumer a written notice containing —
(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

(c) The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

[8] Section 1692e(10) provides, in pertinent part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

rights by, *inter alia*, demanding immediate payment."  (Am. Compl. ¶ 70)

Count Two[9] alleges violations of FDCPA § 1692e(11), which requires a debt collector to

disclose that a communication is from a debt collector, often referred to as the Mini-Miranda.[10]

Plaintiffs maintain that "NCO in subsequent communications with Plaintiffs, and members of the

Class, did not identify itself as a 'debt collector,' or otherwise communicate the Mini-Miranda."

(Am. Compl. ¶ 80)

Count Three[11] alleges violations of FDCPA § 1692c(c), which pertains to the

---

[9] Count Two allegations are brought on behalf of "Subclass One," which includes those "who received a communication from NCO in which NCO failed to (i) identify itself as a 'Bill Collector' or 'Debt Collector;' and/or (ii) communicate the Mini-Miranda, as required by FDCPA 15 U.S.C. § 1692e(11)."  (Am. Compl. ¶ 43)

[10] 15 U.S.C. § 1692e(11) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . . .

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

[11] Count Three allegations are brought on behalf of "Subclass Two," which includes those "who communicated with NCO and were subject to Harassment and/or Abuse as prohibited under the FDCPA or who were contacted despite requests not to be contacted, in violation of the FDCPA."  (Am. Compl. ¶ 44)

circumstances under which a debt collector must cease communication with the consumer,[12] and §1692d, which prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."[13]

---

[12] 15 U.S.C. § 1692c(c) provides:

(c) If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except —

(1) to advise the consumer that the debt collector's further efforts are being terminated;

(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification shall be complete upon receipt.

[13] 15 U.S.C. § 1692d provides:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

Count Three is not at issue in the present Motion to Dismiss, and, accordingly, is not discussed herein.

Plaintiffs append to both Counts One and Two general claims that NCO used "unfair or unconscionable means to collect or attempt to collect any debt" in violation of 15 U.S.C. § 1692f.[14]  (Am. Comp. ¶¶ 72, 82)

---

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

[14] Section 1692f provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication.  Such charges include, but are not

The original complaint in this action, the "Class Action Complaint" ("Complaint") was filed on January 29, 2004.  NCO filed its Answer to the Complaint on March 15, 2004.  On June 1, 2004, Plaintiffs filed the Amended Complaint.  Thereafter, NCO filed a Motion for Partial Dismissal of the Amended Complaint.[15]

NCO moves to dismiss on two principal grounds.  First, in connection with Count One, NCO argues that the January 18 Pre-Recorded Message does not violate § 1692g or § 1692e(10) of the FDCPA.[16]  (Memorandum in Support of Partial Dismissal 3-6 ("NCO Mem."))  Second, in

---

limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if —
(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
(B) there is no present intention to take possession of the property; or
(C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

[15] This case was reassigned from the Honorable William H. Pauley to the undersigned on September 14, 2004.

[16] While the Amended Complaint's drafting is somewhat unclear, Count One appears to encompass not only the January 18 Pre-Recorded Message but also the January 26 Conversation. At argument, NCO's counsel maintained that "Count 1 solely deals with the [January 18 Pre-Recorded] [M]essage."  (Tr. 38)  The Court, however, disagrees.  Count One indicates that "NCO contacted Plaintiffs . . . within the thirty-day validation period and confused and/or overshadowed Plaintiffs', and members of the Class's, thirty-day validation rights by, *inter alia*, demanding immediate payment."  (Am. Compl. ¶ 70)  Count One is arguably vague in that it fails to specify which contact "overshadowed" Plaintiffs' rights.  Fairly construing the Amended Complaint, however, the claim encompasses any contact during the thirty-day validation period, thus including both the January 18 Pre-Recorded Message and the January 26 Conversation.

connection with Count Two, NCO argues that it complied with the § 1692e(11) requirement that it disclose that it is a debt collector in its communications.[17]

## II.  Discussion

### A.  The FDCPA

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692e.  Congress found such abuses by debt collectors to be "serious and widespread."  *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996).

"The FDCPA establishes a civil cause of action against 'any debt collector who fails to comply with any provision of this subchapter with respect to any person.'"  *Sakrani v. Koenig*, No. Civ. A 05-1192, 2006 WL 20514, at *2 (D. N.J. Jan. 3, 2006)

---

Moreover, if anything Count One more likely includes the January 26 Conversation since it refers to contact where there was a "demand[] [for] immediate payment," and the January 18 Pre-Recorded message makes no specific reference to payment.

Thus, even if the Court accepts NCO's argument, this would only result in dismissal of Count One to the extent that it is based on the January 18 Pre-Recorded Message.  Although the argument is not presented in NCO's brief, out of an abundance of caution, the Court will also consider whether NCO's argument also applies to the January 26 Conversation.

[17] NCO also argues that "Plaintiffs Zebro and Ashjian do not allege they received or otherwise heard the prerecorded message" and that "[t]heir Count 1 clams should be dismissed on this basis alone."  (NCO Mem. 3)  As noted above, however, while the Amended Complaint is somewhat unclear as to the similarities and differences between the message heard by Foti and those possibly heard by Zebro and Ashjian, the Court need not decide this question now.  Rather, the Court evaluates the Motion to Dismiss based on the specific pre-recorded message alleged to have been heard by Foti.  The issue of whether other parties, such as Zebro and Asjian, properly fall within the class of Plaintiffs encompassed in Foti's claims is a question for another day.

12

(quoting 15 U.S.C. § 1692k(a)).  Specifically, the FDCPA "prohibits unfair or unconscionable

collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of

any false, misleading, or deceptive statements in connection with a debt, and it requires that

collectors make certain disclosures."  *Acosta v. Campbell*, No. 6:04 Civ. 761, 2006 WL 146208,

at *12 (M.D. Fla. Jan. 18, 2006) (citing 15 U.S.C. §§ 1692d, 1692e, 1692f).  The Act also

requires debt collectors to notify debtors about their ability to challenge the validity of a debt and

to provide other basic information.  *See* 15 U.S.C. § 1692g.

    B.  Standard of Review

    NCO seeks to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(c).  While

the Motion is styled as being brought pursuant to Rule 12(c), because the Motion was filed *prior*

to the filing of an answer to the Amended Complaint, it is more properly construed as a Motion

made pursuant to Fed. R. Civ. P. 12(b)(6).  *Cf. Harris v. City of New York*, 186 F.3d 243, 249 (2d

Cir. 1999) ("[W]e look to the allegations in [the amended complaint], which is the legally

effective pleading for Rule 12(b)(6) purposes."); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124,

1128 (2d Cir. 1994) ("'It is well established that an amended complaint ordinarily supersedes the

original, and renders it of no legal effect.'"), *superseded by statute on other grounds*, Private

Securities Litigation Reform Act, 15 U.S.C. § 78u-4, *as recognized in In re Paracelsus Corp.*

*Sec. Litig.*, 61 F. Supp. 2d 591, 595 (S.D. Tex. 1998) (quoting *Int'l Controls Corp. v. Vesco*, 556

F.2d 665, 668 (2d Cir. 1977)).  Even if, however, this Court were to consider the Motion as one

made pursuant to Rule 12(c), the standard under Rule 12(c) is substantively identical to that

under 12(b)(6).  *See Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) ("'In deciding a Rule

12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6),

accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.'") (quoting *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)).

In examining a motion to dismiss, the Court must "accept as true the factual allegations made in the complaint and draw all inferences in favor of the plaintiffs." *Grandon v. Merrill Lynch & Co., Inc.*, 147 F.3d 184, 188 (2d Cir. 1998). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Dismissal is appropriate "only if there are no legal grounds upon which relief may be granted." *Virgilio v. City of New York*, 407 F.3d 105, 111 (2d Cir. 2005).

C.  Whether NCO Sent "Communications" to Plaintiffs

In order to be subject to some of the protections of the FDCPA, correspondence must be a "communication" within the meaning of the Act. There is no dispute that the January 26 Conversation constitutes a "communication."[18] Moreover, there is no suggestion that telephone communications, in contrast to written communications, are not protected by the FDCPA.

NCO argues, however, that the January 18 Pre-Recorded Message is not a "communication" within the meaning of the FDCPA because it "does not convey any

---

[18] At argument, NCO's counsel conceded this point:

THE COURT:  Then it is a communication.  It conveys information about a debt.
MR. ISRAEL:  Absolutely.
THE COURT:  So the telephone conversation, you will concede is a
communication.
MR. ISRAEL:  Yes.

(Tr. 18)

information regarding a debt, but instead simply requests a return call regarding an important business matter."  (NCO Mem. 4)  NCO suggests that to the extent the message is not a "communication," Plaintiffs' § 1692g and § 1692e(10) claims (in Count One), and Plaintiffs' § 1692e(11) claims (in Count Two) should be dismissed with respect to the January 18 Pre-Recorded Message.

While it is clear that the message must be a "communication" to be protected by § 1692e(11) (requiring disclosure in "subsequent *communications*") (emphasis added), correspondence does not necessarily need to be a "communication" in order to be subject to Plaintiffs' § 1692g claims in Count One.  Rather, the § 1692g claim, discussed below, addresses whether the January 18 Pre-Recorded Message "overshadowed" the otherwise valid initial communication, the January 1 Letter.  Resolution of that claim, however, does not depend on whether the January 18 Pre-Recorded Message is a "communication" under the Act. 15 U.S.C. § 1692a(2) ("The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium.").  Additionally, the § 1692e(10) claim (in Count One) hinges on whether the debt collector made "use of any false representation or deceptive means to collect or attempt to collect any debt . . . ." 15 U.S.C. § 1692e(10).   This claim also does not depend on a finding that an allegedly false representation was in the form of a "communication" under the Act.  Thus, even if NCO prevails in establishing that the January 18 Pre-Recorded Message does not constitute a "communication," this would only implicate the § 1692e(11) claim in Count Two.

In any event, NCO's Memorandum of Law in support of its Motion failed to cite one case in support of its position that the January 18 Pre-Recorded Message is not a communication, and

15

pointed to only one case at oral argument.[19]  (Tr. 7)  Given this paucity of authority, the Court has

little difficulty in rejecting NCO's narrow interpretation of the word "communication," and

concludes that the January 18 Pre-Recorded Message is protected as a "communication" under

the FDCPA.

"The FDCPA defines 'communication' very broadly as 'the conveying of information

regarding a debt directly or indirectly to any person through any medium.'"  *Romea v. Heiberger*

*& Assocs.*, 163 F.3d 111, 114 n.2 (2d Cir. 1998) (quoting 15 U.S.C. § 1692(a)(2)) (holding that

notice demanding payment of rent arrearage or surrender of rented premises to landlord was a

"communication" within the meaning of the FDCPA).  While the Second Circuit has not

precisely defined the scope of the term "communication," it has suggested in other contexts that,

consistent with Congress's intent in enacting the FDCPA, the statute should be broadly

construed.  *See Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989) ("[I]t is

apparent that the prescribed requirement can further the Congressional purpose in enacting the

FDCPA in 1977, which was to prevent 'abusive, deceptive, and unfair debt collection

practices.'") (citations omitted) (holding that under the pre-amended version of § 1692e(11),

disclosure is required in all communications);[20] *see also Cavallaro v. Law Office of Shapiro &*

*Kreisman*, 933 F. Supp. 1148, 1153 (E.D.N.Y. 1996) ("The Second Circuit also has warned debt

collectors against loosely interpreting the FDCPA.") (citing *Russell*, 74 F.3d at 35); *accord Blair*

---

[19] NCO cites to *Fava v. RRI, Inc.*, No. 96 Civ. 629, 1997 WL 205336 (N.D.N.Y. Apr. 24, 1997), but that case is not helpful to Defendant.  First, the court noted in *Fava* that there could be no FDCPA claim based on the debt collector's fax because that fax was not specifically addressed in plaintiff's complaint.  *Id.* at *6.  Second, the court's one-line comment is *dicta* and there is no discussion of the details of the fax at issue.  *Id.*

[20] As noted, *infra* at note 34, the statute was amended in 1996.

16

*v. Sherman Acquisition*, No. 04 Civ. 4718, 2004 WL 2870080, at *2 (N.D. Ill. Dec. 13, 2004)

("Because it is designed to protect consumers, the FDCPA is, in general, liberally construed in

favor of consumers to effect its purpose.").

Outside the Second Circuit, at least one court has rejected the very claim made by

Defendant.  In *Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F. Supp. 2d 1104 (C.D. Cal. 2005), the

debt collector argued that its standard voicemail messages to debtors were not

"communications" under the FDCPA because "they did not convey[] information regarding a

debt directly or indirectly to any person."[21]  *Id.* at 1115 (omitting quotations) (brackets in

original).  In rejecting the argument, the court held:

> While the messages may not technically mention specific
> information about a debt or the nature of the call, § 1692a(2)
> applies to information conveyed "directly or indirectly."
> Defendant conveyed information to plaintiff, including the fact that
> there was an important matter that she should attend to and
> instructions on how to do so.

*Id.* at 1116.  Further, as is evident from Plaintiffs' allegations in this case, the *Hosseinzadeh* court

found it significant that the voicemails "were merely the first step in a process designed to

communicate with plaintiff about her alleged debt."  *Id.*

*Hosseinzadeh* is on all-fours with this case.  Defendant's voicemail message, while

---

[21] The voicemail messages were similar to the one at issue in this case.  One example is:

> Hello, this is Thomas Hunt calling.  Please have an adult contact
> me regarding some rather important information.  This is not a
> sales call, however, regulations prevent me from leaving more
> details.  You will want to contact me at 1-877-647-5945 as soon as
> possible.  This is a toll free number.  Once again this is Thomas
> Hunt calling and my number is 1-877-647-5945.  Thank you.

*Hosseinzadeh*, 387 F. Supp. 2d at 1107.

17

devoid of any specific information about any particular debt, clearly provided some information, even if indirectly, to the intended recipient of the message.  Specifically, the message advised the debtor that the matter required immediate attention, and provided a specific number to call to discuss the matter.  Given that the obvious purpose of the message was to provide the debtor with enough information to entice a return call, it is difficult to imagine how the voicemail message is not a communication under the FDCPA.[22]

The scope of the term "communication" has been addressed in other contexts as well, including under § 1692c(b), which regulates communications between debt collectors and third parties (people other than the debtor).[23]  Two cases have suggested that correspondence is not a

---

[22] In a footnote, the *Hosseinzadeh* court rejected Plaintiffs' argument that disclosures included in § 1692e(11) were required to be included in initial <u>and</u> subsequent communications, citing a Ninth Circuit decision holding that where the debtor already knows the identity of the debt collector, there is no need for § 1692e(11) disclosures.  387 F. Supp. 2d. at 1115 n.17 (citing *Pressley v. Capital Credit & Collection Serv.*, 760 F.2d. 922, 925 (9th Cir. 1985)).  However, it bears noting that *Pressley* has been rejected by several circuits, including, most importantly, the Second Circuit.  *See Pipiles*, 886 F.2d at 26-27 (noting the three reasons the Second Circuit "disagree[s]" with *Pressley*); *accord Tolentino v. Friedman*, 46 F.3d 645, 650 (7th Cir. 1995) ("Several courts of appeals have also rejected the *Pressley* decision and held that the debt collection warning must be contained in 'all communications.'") (citing, among others, *Pipiles*).

[23] 15 U.S.C. § 1692c(b) provides:

Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Thus, "[t]o be prohibited, the third party communication need only be 'in connection with the collection of a debt.'"  *Henderson v. Eaton*, No. Civ. A. 01-0138, 2001 WL 969105, at *2 (E.D. La. Aug. 23, 2001).

"communication" where it does not convey any specific information about the debt being
collected.  *See Horkey v. J.V.D.B. & Assocs., Inc.*, 179 F. Supp. 2d 861, 868 (N.D. Ill. 2002)
("The Court agrees with Defendant and finds that there is no evidence that [defendant's
employee] in communicating with [p]laintiff's co-worker . . . discussed [p]laintiff's debt.  Rather,
[the] conversation with [plaintiff's co-worker] was merely limited to inquiring as to [p]laintiff's
whereabouts . . . ."), *aff'd on other grounds*, 333 F.3d 769 (7th Cir. 2003); *Fava*, 1997 WL
205336, at *6 ("The March 12th fax does not convey any information regarding the [plaintiffs']
debt and therefore is not a communication within the meaning of the Act.").

However, in *West v. Nationwide Credit*, 998 F. Supp. 642, 644 (W.D.N.C. 1998), the
court rejected a narrow interpretation of the word "communication," similar to that advanced by
NCO in this case.  The plaintiff in *West* alleged that defendants violated § 1692c(b) by contacting
plaintiff's neighbor.  Defendants argued that a debt collector's phone call informing a neighbor
that he had a "very important" matter to discuss did not violate § 1692c(b) because no
information was actually conveyed about plaintiff's debt.  The *West* court rejected this narrow
interpretation of "communication" in favor of a broader interpretation.  *Id.* at 644.  In reaching
this conclusion, the *West* court noted that "[i]n interpreting the meaning of a statute, it is well
settled that '[t]he "plain meaning" of statutory language controls its construction,'" and went on
to examine the dictionary definitions of "regarding."  *Id.* (quoting *Summit Inv. & Dev. Corp. v.
Leroux*, 69 F.3d 608, 610 (1st Cir. 1995)).  In particular, the court noted:  "Webster's Ninth New
Collegiate Dictionary (1st ed. 1983) defines the term 'regard' as, *inter alia*, 'to relate to,' while it
provides the following definition of the term 'regarding': 'with respect to: concerning.'"  *Id.*
"Based on these definitions, the court believes the ordinary meaning of the term 'regarding' is

19

consistent with the broader interpretation advocated by Plaintiff." *Id.*

This conclusion has been embraced by other courts as well in the context of applying

§ 1692c(b). *See, e.g., Henderson*, 2001 WL 969105, at *2 (rejecting defendant's argument that

letter sent to employer seeking information about whether plaintiff was employed, her wage

scale, her type of employment, the full name of her employer, and if terminated, the name of her

present employer, did not violate § 1692c(b) because it did not suggest a debt collection

purpose).[24]

Thus, given the choice of language by Congress, the FDCPA should be interpreted to

cover communications that convey, directly or indirectly, any information relating to a debt, and

---

[24] *Henderson* distinguished the Seventh Circuit's decision in *Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384, 388 (7th Cir. 1998) on the grounds that "the communication in *Bailey* was from the defendants to the debtors, not to a third party." *Henderson*, 2001 WL 969105, at *2. In *Bailey*, the Seventh Circuit held, in *dicta*, that a letter informing debtors of the current status of their accounts and due dates was not a "communication":

> It is worth noting that the plaintiffs lose for a different reason, too. Under the law only communications "in connection with the collection of any debt" (see 15 U.S.C. §§ 1692e, 1692g) fall under the ambit of the Act, and the defendants' letters cannot reasonably be placed in that category. The important letter dated January 4 does not "demand" any payment whatsoever, but merely informs the Baileys about "the current status" of their account. The due dates listed in the letter are all prospective. Surely this is not the type of dunning letter that describes a communication related to "the collection" of a debt.

*Bailey*, 154 F.3d at 388-89.

*Bailey*, however, is distinguishable from the present case in that the letter in that case listed future payment dates rather than seeking to collect on a debt. *See id.* at 389 ("A warning that something bad might happen if payment is not kept current is not a dun, nor does it seek to collect any debt, but rather the opposite because it tries to prevent the circumstance wherein payments are missed and a real dun must be mailed."). Moreover, the *Bailey* court was focused less on the question of whether the letter was "communication," and more on the question of whether it was "related to 'the collection' of a debt." *Id.*

not just when the debt collector discloses specific information about the particular debt being collected.  Indeed, a narrow reading of the term "communication" to exclude instances such as the present case where no specific information about a debt is explicitly conveyed could create a significant loophole in the FDCPA, allowing debtors to circumvent the § 1692e(11) disclosure requirement, and other provisions of the FDCPA that have a threshold "communication" requirement, merely by not conveying specific information about the debt.  In fact, under Defendant's interpretation of "communication," a debt collector could call regularly after the thirty-day validation notice is sent, and not be subject to § 1692e(11)'s requirement so long as the message did not convey specific information about the debt.[25]  Such a reading is inconsistent with Congress's intent to protect consumers from "serious and widespread" debt collection abuses.

The term "communication," of course, is limited to those situations involving the "conveying of information regarding a debt directly or indirectly."  15 U.S.C. § 1692(a)(2).  A phone call by a debt collector that in no way regards, or relates to, an outstanding debt would not violate the Act.  *See Bailey*, 154 F.3d at 388-89.  Here, however, there appears to be no question

_____

[25] Confronted with this point at argument, Defendant's counsel hedged on whether such actions would be permissible under the FDCPA.  Counsel stated "I am hedging, because I think when you add the word 'payment' it is poor judgment" ( Tr. 9), and suggested that "[a]t some point if you call every single day and you keep asking for immediate payment," that might be problematic.  (Tr. 10)  Defendant's counsel was unable to provide any argument as to why under his interpretation of "communication," constant demands, even for payment, would not violate the FDCPA so long as the communications did not convey specific information about the debt.

The Court agrees that provisions apart from § 1692e(11) might constrain a debt collector from making such persistent demands.  *See, e.g.*, 15 U.S.C. § 1692d(5)-(6).  However, the fact that other provisions may provide some protections to consumers is not a basis for interpreting "communication" in a manner that would allow debt collectors to easily circumvent § 1692e(11), and other FDCPA provisions where there is a threshold "communication" requirement.

that the call related to the collection of a debt — when Foti returned the call he was explicitly

told that it was in connection with the collection of a debt.  Moreover, even under a more narrow

reading of the term "communication," requiring specific information about the debt to be

conveyed, the January 18 Pre-Recorded Message arguably satisfies that standard.  The message

indicates that it is a call from NCO Financial Systems — such identification could suggest to a

listener who is familiar with the fact that NCO Financial Systems is a debt collector — and that

the call is about a debt, and thus may indirectly convey information about the debt.  This

conclusion is not inconsistent with the Court's rejection, below, of NCO's argument that Count

Two should be dismissed as to the January 18 Pre-Recorded Message.  Arguably, the message

sufficiently conveys information about a debt to be deemed a "communication," particularly

given the Second Circuit's suggestion that the Act should be broadly construed, despite the fact

the Court concludes that it fails to comply with § 1692e(11)'s disclosure requirement under the

"least sophisticated consumer" standard.

Finally, Defendant suggests that its interpretation of "communication" is necessary to

avoid placing debt collectors in a virtual "Hobson's choice" — debt collectors must disclose their

identity as a debt collector to comply with § 1692e(11)'s requirements, but are prohibited from

leaving a message identifying themselves as such by § 1692c(b)'s prohibition on

communications to third parties.  (NCO Mem. 7)  Thus, Defendant argues that "[t]he safest thing

to do is to recognize what it is.  It is not a communication.  Once you recognize that it is not a

communication, then there is no obligation to identify that you are a debt collector."  (Tr. 8)

This argument is unconvincing.

The fact that FDCPA provisions affect the means by which NCO wishes to collect the

debt during the thirty-day validation period does not warrant disregarding Congress's clear intent

to combat widespread abuse in debt collection practices.  NCO's argument is essentially based on

the assumption that it is somehow entitled to leave pre-recorded messages.  It is true that the

FDCPA does not prevent all conduct by the debtor during the thirty-day validation period.  *See*

*Orenbuch v. Computer Credit, Inc.*, No. 01 Civ. 9338, 2002 WL 1918222, at *2 (S.D.N.Y. Aug.

19, 2002) ("[N]othing in the FDCPA prevents a debt collector that has not received a request for

validation or other reply from a consumer from continuing to attempt to collect the debt during

the 30-day validation period, provided that, in so doing, it does not create the impression that the

consumer has less than 30 days in which to dispute the debt.") (citing *Smith v. Computer Credit,*

*Inc.*, 167 F.3d 1052, 1054-55 (6th Cir. 1999)); *Kramsky v. Trans-Cont'l Credit & Collection*

*Corp.*, 166 F. Supp. 2d 908, 912 (S.D.N.Y. 2001) ("The FDCPA does not prohibit debt collectors

from encouraging consumers to pay their debts.  It was created to protect consumers from

harassing and unscrupulous practices of debt collectors, including misleading representations.").

However, just because a debt collector is permitted to continue to attempt to collect the

debt does not entitle the collector to use *any* means, even if those means are the most economical

or efficient.  *See Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. 1993) ("It is apparent that

mass mailing may sometimes be the only feasible means of contacting a large number of

delinquent debtors, particularly when many of those debtors owe relatively small sums.  But it is

also true that the FDCPA sets boundaries within which debt collectors must operate.").  In this

case, the fact that NCO may not be able to leave a pre-recorded message that complies with both

§ 1692e(11) and § 1692c(b) of the Act in no way warrants a conclusion that "communication"

should be narrowly interpreted.  Rather, it merely suggests that a debt collector is not permitted

to leave a pre-recorded message in violation of the FDCPA.  Debt collectors, however, could

continue to use other means to collect, including calling and directly speaking with the consumer

or sending appropriate letters.  Thus, the alleged "Hobson's Choice" in this case is self-imposed

by NCO.  It is only because of the method of debt collection selected — calling and leaving the

type of pre-recorded messages — that NCO is faced with this potential dilemma.  "As the

Supreme Court has held in the general context of consumer protection — of which the Fair Debt

Collection Practices Act is a part — 'it does not seem unfair to require that one who goes

deliberately close to an area of proscribed conduct shall take the risk that he may cross the

line.'"[26]  *Russell*, 74 F.3d at 35 (quoting *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393

---

[26] While the Court does not reach the question of whether some pre-recorded telephone messages might comply with both § 1692e(11) and § 1692c(b) of the Act (as any such resolution would be purely advisory), the Court notes that there is some authority suggesting debt collectors could comply with both provisions.  For example, in *Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 281 F. Supp. 2d 1156 (N.D. Cal. 2003), the court addressed the question of how to harmonize the prohibition in § 1692d(b) on "the placement of telephone calls without meaningful disclosure of the caller's identity," 15 U.S.C. § 1692d(6), with provisions such as § 1692c(b) regulating disclosure to third parties.  In denying the motion for summary judgment on the § 1692d(6) claim, the court rejected the argument that the provision could not apply equally to automated messages in light of the restrictions on third party communications:

> While the Court acknowledges that disclosure during an automated call could compromise the debtor's privacy if another party such [sic] a neighbor or relative inside the home picks up the debtor's phone and hears the automated call, the possible compromise is less likely and more remote than where *e.g.*, the debtor indicates the nature of the collection notice on the outside of an envelope sent by mail for the world to see.

> As for third party communications, the legislatures' [sic] concern in enacting these provisions about privacy violations resulting from deliberate disclosure of the debtor's status to third parties such as the debtor's employer has far less applicability to phone calls made to the debtor's phone number at his or her residence for similar reasons.

(1965)) (additional quotations omitted).

In sum, the January 18 Pre-Recorded Message is properly deemed a "communication" under the FDCPA.

### D. Whether NCO Violated the FDCPA By "Overshadowing" the Validation Notice

The next question is whether the two subsequent communications — (1) the January 18 Pre-Recorded Message and (2) the January 26 Conversation — violated the FDCPA by "overshadow[ing] [the January 1 Letter's proper validation notice] in such a way as to create confusion as to Plaintiffs' rights, and thereby illegally shorten the 30 day period in which a debtor may request verification of the alleged debt." *Orenbuch*, 2002 WL 1918222, at *1. This is a question of law, and is therefore properly considered on a motion to dismiss. *See Russell*, 74 F.3d at 33; *accord Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 n.2 (3d Cir. 2000) ("[T]he Seventh Circuit is the only court of appeals to have held that whether an unsophisticated consumer would be confused by allegedly contradictory or overshadowing language is a question of fact which precludes dismissal under Fed. R. Civ. P. 12(b)(6).") (citing, *inter alia*, *Russell*).

### 1. Applicable Legal Standards

The FDCPA mandates that debt collectors provide debtors with a written validation notice, informing debtors of their rights under § 1692g, including, among other things, the right to dispute the validity of the debt in question within thirty days of receiving the notice.[27] *See*

_____

*Joseph*, 281 F. Supp. 2d at 1163-64 (internal citations omitted). Thus, *Joseph* suggests courts could arguably harmonize the § 1692e(11) disclosure requirements and prohibition on third-party communications to permit disclosure in automated messages even where there might be some risk of disseminating information to third parties.

[27] The initial collection letter is to include five items: (i) the amount of the debt; (ii) the name of the creditor; (iii) a statement notifying debtor that he/she has thirty days to contest the

*Bartlett v. Heibl*, 128 F.3d 497, 498-99 (7th Cir. 1997); *see also Wilson*, 225 F.3d at 354 ("[T]he debt validation provisions of section 1692g were included by Congress to guarantee that consumers would receive adequate notice of their rights under the law."); *Johnson v. Equivax Risk Mgmt. Servs.*, No. 00 Civ. 7836, 2004 WL 540459, at *4 (S.D.N.Y. Mar. 17, 2001) ("In short, . . . § 1692g requires the debt collector to inform the consumer of his right to dispute and demand verification of the debt."). Upon the expiration of the thirty-day validation period, the debt collector may presume the validity of the debt. *Id.* at 498. "This validation period, however, is not a grace period: a debt collector is 'perfectly free' to demand payment and pursue collection efforts, including an appropriate lawsuit against the debtor, within the validation period." *Durkin v. Equifax Check Servs.*, 406 F.3d 410, 416 (7th Cir. 2005) (quoting *Bartlett*, 128 F.3d at 500-01). "Thus, during the validation period, the debtor's right to dispute coexists with the debt collector's right to collect." *Durkin*, 406 F.3d at 416.

Even when the initial validation notice is adequate, a defendant "may still be liable under § 1692g and § 1692e(10) if it sends a subsequent communication within the validation period that 'overshadows or contradicts' such notice." *Barrientos v. Law Offices of Mark L. Nichter*, 76 F. Supp. 2d 510, 513 (S.D.N.Y. 1999) (citing *Russell*, 74 F.3d at 34-35). That is, "[e]ven if a debt collector conveys the required information, the collector nonetheless violates the Act if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty. Thus, a debt collector violates the Act if its communication is

_____

validity of the debt, or the debt will be presumed valid; (iv) a statement that if the debtor disputes the debt, the collector will obtain verification of the debt or a copy of a judgment against the debtor; and (v) a statement that upon request by the debtor within the thirty-day period, the debt collector will provide the debtor with identifying information about the creditor. *See* 15 U.S.C. § 1692g(a).

'reasonably susceptible to an inaccurate reading' of the required message." *DeSantis v. Computer Credit Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (quoting *Russell*, 74 F.3d at 35); *see also Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998) ("A debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights."). Moreover, the Second Circuit has explicitly held that, in establishing whether language contained in a notice overshadowed or contradicted the mandatory validation notice, "[i]t is unnecessary to prove the contradiction is threatening." *Russell*, 74 F.3d at 35; *see also DeSantis v. Roz-BER, Inc.*, 51 F. Supp. 2d 244, 249 (E.D.N.Y. 1999).

"The FDCPA establishes a strict liability standard; a consumer need not show intentional violation of the Act by a debt collector to be entitled to damages."[28] *Castro v. ARS Nat'l Servs., Inc.*, No. 99 Civ. 4596, 2000 WL 264310, at *2 (S.D.N.Y. Mar. 8, 2000) (citing *Russell*, 74 F.3d at 33). A single violation of the Act is sufficient to subject a debt collector to liability under the Act. *Id.*

The Second Circuit has explained that "[w]hen determining whether § 1692g has been violated, an objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector, is applied." *Russell*, 74 F.3d at 34 (citing *Clomon*, 988 F.2d at 1318) (additional citations omitted); *see also Greco v. Trauner, Cohen &*

---

[28] The FDCPA does provide a debt collector with an affirmative defense known as the "bona fide error defense." *See Achaempongtieku v. Allied Interstate, Inc.*, No. 04 Civ. 8397, 2005 WL 2036153, at *6 (S.D.N.Y. Aug. 24, 2005). To prevail on this defense, the debt collector must establish that the FDCPA violation was unintentional and resulted from a bona fide error notwithstanding procedures reasonably adapted to avoid error. *See* 15 U.S.C. § 1692k(c).

*Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 309 (2d Cir. 2003); *McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 190 (2d Cir. 2002).  That is, "the test is how the least sophisticated consumer — one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer — understands the notice he or she receives."  *Russell*, 74 F.3d at 34.

"The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."  *Clomon*, 988 F.2d at 1318. At the same time, courts have been conscious of countervailing interests:  "It should be emphasized that in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness.  Indeed, courts have consistently applied the least-sophisticated-consumer standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices."  *Id.* at 1319 (internal citations omitted); *see also Achaempongtieku*, 2005 WL 2036153, at *3 ("[T]he least sophisticated consumer standard serves the FDCPA's dual purpose:  to protect the consumer from unscrupulous collection practices and save debt collectors from liability for unreasonable misrepresentations of collection notices.") (omitting quotations).

With this standard in mind, the Court considers the two communications at issue.

## 2.  The January 18 Pre-Recorded Message

The January 18 Pre-Recorded Message is comprised of approximately thirty words.  After greeting the listener ("Good day"), the message:  (i) identifies the caller as NCO Financial Systems; (ii) states that the call is about a personal business matter; (iii) which requires immediate attention; and (iv) ends by asking the recipient of the message to "please call back,"

providing a toll-free number.  (Am. Compl. ¶ 27, Ex. B)  The question, therefore, is whether this message confuses or overshadows the initial validation notice in the eyes of the reasonable, least sophisticated consumer, and, therefore, violates § 1692g.

Plaintiffs claim that this message does in fact violate § 1692g by overshadowing the initial validation notice.  Plaintiffs' main argument is that the message emphasized that the matter requires "immediate attention," and, accordingly, might suggest to the least sophisticated consumer that s/he is not entitled to a thirty-day validation period.  Indeed, a number of cases have found violations of the FDCPA where a written notice includes the words "immediate attention" or similar language suggesting an urgency to resolution of the debt, even without demanding immediate payment.[29]   *See, e.g.*, *Roz-BER*, 51 F. Supp. 2d at 246, 250 (finding

---

[29] There also is ample authority that explicit demands for immediate payment can violate § 1692g.  *See, e.g., Russell*, 74 F.3d at 33 (finding that second notice overshadowed where the notice was captioned "CONTACT THIS OFFICE AT ONCE" and stated:  "FURTHER DELAY ON YOUR PART COULD BE COSTLY.  AT THIS POINT ONLY YOUR ACTION WILL DETERMINE FUTURE HANDLING.  WE URGE YOUR COOPERATION FOR YOUR OWN SAKE.  PAYMENT IN FULL WITHIN 5 DAYS IS NOW DEMANDED.  WHAT WILL YOUR ANSWER BE?") (bold emphasis omitted); *Barrientos*, 76 F. Supp. 2d at 512, 514-15 (finding overshadowing where second notice provided:  "Although notices and demands have been made upon you for payment of this liability due our client as shown [in the caption] above, we have no record of receipt of payment from you.  We have been authorized by our client to take any lawful action we deem necessary to collect this debt.  Please make payment today so we can put this matter to rest."); *Swift v. Maximus, Inc.*, No. 04 Civ. 216, 2004 WL 1576618, at *4 (E.D.N.Y. July 15, 2004) ("The letter's demand for payment takes on a quality of 'immediateness.'  Coupled with the demand for immediate payment, the letter threatens adverse consequences.").  That said, the courts have not always found language demanding immediate payment to cross the line.  *See, e.g., Durkin*, 406 F.3d at 417 ("[T]he simple act of demanding payment in a collection letter during the validation period does not automatically create an unacceptable level of confusion so as to entitle the plaintiffs to summary judgment."); *Gervais v. Riddle & Assocs.*, 363 F. Supp. 2d 345, 353 (D. Conn. 2005) ("[A] collection letter's demand for immediate payment does not, standing alone, violate the FDCPA.") (citing *Morgan v. Credit Adjustment Bd., Inc.*, 999 F. Supp. 803 (E.D. Va. 1998)); *Vasquez v. Gertler & Gertler, Ltd.*, 987 F. Supp. 652, 657 (N.D. Ill. 1997) (holding that request for payment without "further delay" did not "demand[] payment within a shorter period than 30 days").

violation where notice read, in pertinent part:  "Your account has been placed in our hands by the above named client with full authority to demand payment.  You may not have intentionally neglected this obligation, but it is seriously past due and demands your IMMEDIATE ATTENTION!   If you would like our cooperation then:  1. Remit payment in full to this office or, 2. Contact the undersigned in person or by telephone and arrange settlement."); *Flowers v. Accelerated Bureau of Collections*, No. 96 Civ. 4003, 1997 WL 224987, at *2 n.2 (N.D. Ill. Mar. 19, 1997) (finding violation where second notice read:  "PLEASE BE ADVISED:  You were previously notified and given ample opportunity to resolve this matter, and you have failed to do so.  If you feel you have some legitimate reason for failing to respond, NOW is your opportunity to bring it to my attention.  Telephone me immediately or write me today!  We will discuss your delinquent account and help you come to a reasonable conclusion.  THIS IS MY NOTIFICATION TO YOU."); *cf. McNab v. Statewide Recovery Servs.*, No. Civ. A. 99-1571 R., 2000 WL 135839, at *1, *4 (E.D. La. Feb. 4, 2000) (rejecting defendant's motion for summary judgment and finding that "a reasonable jury could determine that the language in the letter would lead the least sophisticated consumer to believe that she had to waive her statutory right to contest the debt within thirty days" where letter read, in pertinent part: "We bring to your attention the above account which has been handed to us for immediate collection, and hereby request your prompt remittance to pay this long standing account.  Failure to respond to this request for payment will leave us no alternative but to proceed against you within state and federal regulations to collect your past due account.  Please give this your immediate attention. Do not simply ignore this notice!").

These cases, however, are distinguishable from the present circumstances.  Those

decisions have focused less on the words "immediate attention" as constituting a *per se* violation

of the FDCPA, and more on whether the overall tenor of the notice creates an impression of dire

urgency that might confuse the least sophisticated consumer about his/her validation rights.  For

example, in *Roz-BER*, the court focused on the overall sense of urgency conveyed in the notice:

> Specifically, the words "IMMEDIATE ATTENTION," followed by an
> exclamation mark raises significant concern.  Moreover, the contested language
> implicitly threatens the debtor that if he does not either "(1) remit payment in full
> to this office or, (2) Contact the undersigned in person or by telephone and
> arrange settlement" he will not receive "cooperation" from the collection agency.
> Although . . . a threat is not required for the contested language to overshadow or
> contradict the validation notice, the Court is of the view that the debt collection
> letter at issue is in fact threatening in nature.  Indeed, who would not want the
> "cooperation" of a collection agency attempting to collect a debt?  Recognizing
> this undeniable fact, the defendant has cleverly attempted to push the boundaries
> of a lawful collection letter, by using implicit, rather than explicit threats, by
> couching what is in essence a demand for immediate payment, with language that
> the defendant argues does not overshadow the debtor's rights under section
> 1692g.

51 F. Supp. 2d. at 250.

*Flowers* also is different in that the follow-up letter was specifically phrased in a manner

that suggested that the validation period had expired by referencing the fact that "[y]ou were

previously notified and given *ample opportunity* to resolve this matter, and you have failed to do

so."[30]  *Flowers*, 1997 WL 224987, at *2 n.2 (emphasis added); *see id.* at *2 ("When coupled with

---

[30] Furthermore, in *Flowers*, the court deemed it significant that the follow-up letter "made
no reference to the fact that [the consumer] still had approximately 13 days in which to voice her
concerns."  *Flowers*, 1997 WL 224987, at *3.  According to the court, "[b]y omitting this detail,
the second letter might be read to imply that the rights set forth in the first letter were no longer
available."  *Id.*  However, other courts have since rejected the suggestion that consumers need to
be reminded of their validation rights.  *See Durkin*, 406 F.3d at 417 ("[N]ot every follow-up letter
sent during the validation period must automatically reiterate the safe-harbor validation notice,
refer back to that notice, or remind debtors about the validation period and the time remaining in
that period.  Therefore, the mere absence of any such reiterations and reminders in the follow-up
collection letters does not alone generate an unacceptable level of confusion so as to warrant

Defendants' statement that the consumer has been 'given ample opportunity to resolve this matter,' Plaintiffs argue, the second notice leads an unsophisticated consumer to believe that the period to dispute the validity of the debt has expired.").

In this case, the January 18 Pre-Recorded Message simply indicated that the call was "regarding a personal business matter that requires your immediate attention."  (Am. Compl. ¶ 27, Ex. B)  There is no suggestion that the thirty-day validation period should be disregarded, or that immediate payment is required.  Nor is there an implicit suggestion that failure to cooperate immediately could jeopardize resolution of the debt.  On the contrary, the message merely asks the consumer for a return call ("please call back").

As noted above, "nothing in the FDCPA prevents a debt collector that has not received a request for validation or other reply from a consumer from continuing to attempt to collect the debt during the 30 day validation period, provided that, in so doing, it does not create the impression that the consumer has less than 30 days in which to dispute the debt."  *Orenbuch*, 2002 WL 1918222, at *2.  Thus, Plaintiffs' argument essentially boils down to the claim that the mere use of the phrase "immediate attention" constitutes an overshadowing of a validation notice.  There is little, if any, support in the caselaw for this proposition.

First, a number of cases within the Second Circuit have distinguished between merely contacting the debtor (as happened here), and demanding or urging immediate *payment* of the

---

summary judgment for the plaintiffs."); *Spira v. Ashwood Fin., Inc.*, 358 F. Supp. 2d 150, 158 (E.D.N.Y. 2005) ("Section 1692g(a) merely requires a validation notice to be sent to a consumer on or before five days after an initial communication is sent by the debt collector.  There is nothing in the statute which requires follow-up letters that are mailed within the validation period.").

debt (which did not happen here).[31]  *See, e.g.*, *Achaempongtieku*, 2005 WL 2036153, at *4

(noting that a follow-up letter from a debt collector did not violate § 1692g, in part, because

"there is no indication that repayment, and repayment only, would resolve the dispute"); *Spira*,

358 F. Supp. 2d at 159 ("Plaintiff's argument misses the mark because unlike the letter in *Savino*,

the Follow-up Letter did not state or imply that payment was due immediately."); *Barrientos*, 76

F. Supp. 2d at 515 ("Defendants cite a number of cases for the well-settled proposition that a

debt collector may contact the debtor within the thirty-day validation period so long as the

communication does not demand or urge immediate payment of the debt. . . .   But demanding

immediate payment is precisely what Defendants did . . . .") (internal quotations and citations

omitted).

Moreover, a great number of courts have rejected the argument that the urgency conveyed

by phrases such as "immediate attention" by themselves overshadow an otherwise sufficient

validation notice.  *See, e.g.*, *Peter v. GC Servs. L.P.*, 310 F.3d 344, 349-50 (5th Cir. 2002)

("[S]tatements that request payment or other actions with no time period specified have been

found not to contradict § 1692g notice."); *Spira*, 358 F. Supp. 2d at 159 ("Plaintiff's argument

that the Follow-up Letter overshadows the validation notice because Defendant will use 'every

means available' to collect the debt, and Plaintiff should send payment in full or 'call . . . at

once,' is unpersuasive.") (ellipses in original); *Keen v. Omnibus Int'l, Inc.*, No. 98 Civ. 3947,

1998 WL 485682, at *4 (N.D. Ill. Aug. 12, 1998) (rejecting claim that language in letter stating

that "you should notify us in writing immediately" overshadowed validation notice); *Gammon v.*

_____

[31] Even in *Flowers*, the court "still deem[ed] it significant that the letter did not demand
payment," but concluded that the letter was improper solely because it failed to remind the
consumer of the remaining time left in the validation period.  *Flowers*, 1997 WL 224987, at *3.

*Belzer, P.A.*, No. 96 Civ. 5936, 1997 WL 189291, at *3 (N.D. Ill. Apr. 11, 1997) (rejecting argument that validation notice is rendered ineffective by virtue of language that "Your immediate attention to this matter is in your best interest."); *Vasquez*, 987 F. Supp. at 657 (holding that asking for payment without "further delay" did not contravene § 1692g).

Thus, for example, notices from debt collectors seeking contact from the debtor, even if requested immediately or urgently, are regularly found to be consistent with § 1692g.  As the court noted in *Lerner v. Forster*, 240 F. Supp. 2d 233, 238 (E.D.N.Y. 2003):  "It does not follow that simply because a collection letter instructs a consumer to contact a debt collector that the validation notice is necessarily overshadowed or contradicted."  Instead, the "request for the consumer to contact [the debt collector] . . . merely 'encourages the debtor to communicate with the debt collection agency . . . .'"  *Madonna v. Acad. Collection Serv., Inc.*, No. 3 95 Civ. 000875, 1997 WL 530101, at *5 (D. Conn. Aug. 12, 1997) (quoting *Terran v. Kaplan*, 109 F.2d 1428, 1430 (9th Cir. 1997)).  This sentiment has been echoed by other courts in rejecting claims similar to those made by Plaintiffs here.  *See, e.g., Terran*, 109 F.3d at 1434 ("Here, the request that the alleged debtor immediately telephone a collection assistant does not overshadow the language in the notice that the alleged debtor has thirty days in which to dispute the debt."); *Achaempongtieku*, 2005 WL 2036153, at *4 (noting that "the Collection Letter simply requests that the debtor contact Allied"); *Spira*, 358 F. Supp. 2d at 159 ("[T]he fact that the Follow-up Letter 'instructed' Plaintiff 'to pay in full or call at once, even though the thirty day validation period was still in effect,' did not limit her rights under the Act . . . .").[32]

---

[32] Some of these cases involve situations where there is a single communication that might confuse the least sophisticated consumer, rather than a second communication that arguably overshadows the initial communication.  Second communications may pose a different

In this case, the Court concludes that the language of the January 18 Pre-Recorded Message could not reasonably confuse even the least sophisticated consumer. A debt collector is entitled to follow-up on debt collection during the thirty-day period, and the mere expression of some time sensitivity and a request to return a call does not suggest to the least sophisticated consumer that s/he is no longer entitled to a thirty-day validation period. Notably, this message was devoid of any suggestion that the time to dispute the debt had passed, and it did not cause any confusion about the time remaining to dispute the debt. Nor did the message otherwise contain misleading or inaccurate information. *See Durkin*, 406 F.3d at 417-18 (noting that follow-up message from debt collector which did not "indicate that the time for disputing the debt had passed," or "cloud the amount of time remaining to dispute the debt," or otherwise "contain any overt misinformation, apparent contradiction, or noticeable lack of clarity concerning the validation period" was lawful). While certain communications, even those not explicitly demanding payment, could rise to the level of overshadowing, here the mere use of the phrase "immediate attention" accompanying a request for a return call, in the context of the entire message, does not overshadow. Therefore, Defendant's Motion as to the January 18 Pre-Recorded Message is granted.

---

sort of problem because of the potential that the second letter will be interpreted as altering the terms of the original validation letter. *See Keen*, 1998 WL 485682, at *4 (distinguishing *Flowers* on the grounds that it "involved a *second* communication with the debtor [and] [a]n unsophisticated consumer easily could misunderstand the second letter as revising or altering the rights described in the first communication."). However, even if second notifications are more susceptible to confusion, the ultimate question is still whether the least sophisticated consumer would be confused by the subsequent notice such that it overshadows an otherwise proper notification of the thirty-day validation period. *See Durkin*, 406 F.3d at 417 ("While some follow-up letters may certainly go over the line, . . . [t]he matter turns on whether the specific text contains any impermissible overshadowing or contradiction with respect to the validation notice.").

### 3.  The January 26 Conversation

In contrast, to the extent NCO's argument for dismissal can even be construed to encompass the January 26 Conversation, the Court concludes that dismissal of that claim is inappropriate.  The January 26 Conversation repeatedly demands payment, and threatens continuous demands for payment absent immediate remittance, all before the thirty-day validation period had expired.  (Am. Compl. ¶ 31, Ex. C) ("Q:  So what do you need me to do *today*? A:  Pay the account.") (emphasis added)  Such a conversation is likely to confuse the least sophisticated consumer as to whether s/he continues to enjoy the protections of the thirty-day validation period.  *See Savino*, 164 F.3d at 86 (noting that debt collector's "violation of the Act consisted of its decision to ask for immediate payment without also explaining that its demand did not override the consumer's rights under Section 1692g to seek validation of the debt").

In sum, the Motion to Dismiss Count One is granted to the extent that it challenges the sufficiency of the Amended Complaint's allegations relating to the January 18 Pre-Recorded Message.  However, NCO's challenge to Count One as it relates to the January 26 Conversation is denied.

### 4.  The § 1692e(10) Claims

NCO also seeks to dismiss the claims brought pursuant to § 1692e(10) in Count One. NCO argues that "[s]ince the prerecorded message did not violate § 1692g, it cannot be 'false or deceptive' as contemplated by § 1692e(10)."  (NCO Mem. 5)  Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e(10).  The Second Circuit has explained that "a collection notice is deceptive when it can be reasonably read to have two or

more different meanings, one of which is inaccurate.  The fact that the notice's terminology was vague or uncertain will not prevent it from being held deceptive under § 1692e(10) of the Act." *Russell*, 74 F.3d at 35 (internal citations omitted).

The standard for determining a violation of § 1692e(10) is essentially the same as that for § 1692g.  *See id*. ("Because the initial collection notice in the instant case was reasonably susceptible to an inaccurate reading, it was also deceptive within the meaning of the Act."); *Vera v. Trans-Cont'l Credit and Collection Corp.*, No. 98 Civ. 1866, 1999 WL 163162, at *4 (S.D.N.Y. Mar. 24, 1999) ("For essentially the same reasons that I conclude that the debt validation notice violates § 1692g(a)(3), I also conclude that the notice violates § 1692e(10)."); *Tipping-Lipshie v. Riddle*, No. 99 Civ. 4646, 2000 WL 33963916, at *4 (E.D.N.Y. Mar. 2, 2000) (citing *Vera* for the proposition that a "misleading validation notice violates both sections 1692g and 1692e(10)").  Moreover, Plaintiffs advance no independent argument in support of the § 1692e(10) claim.

Accordingly, for the reasons stated above, the Court grants the Motion to Dismiss the § 1692e(10) claim (in Count One ) as to the January 18 Pre-Recorded Message, and denies the Motion to Dismiss the § 1692e(10) claim (also in Count One) as to the January 26 Conversation.

## 5.  The § 1692f Claims

NCO also argues that "[s]ince both the §§1692g and 1692e(10) claims are unsupportable, the ancillary §1692f claim fails."  (NCO Mem. 6)  Section 1692f generally prohibits a debt collector from employing "unfair or unconscionable means to collect" a debt.  15 U.S.C. § 1692f.  Eight subsections list certain practices that violate the section, however, "conduct that may be deemed 'unfair or unconscionable' is not limited to the acts enumerated in subsections (1)

37

through (8)." *Bryant v. Bonded Accounts Service/Check Recovery, Inc.*, 208 F.R.D. 251, 258 (D. Minn. 2000). Instead, § 1692f "allows the court to sanction improper conduct that the FDCPA fails to address specifically." *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996).

Here, Plaintiff does not allege any improper acts listed within Section 1692f. This alone, of course, is not fatal as § 1692f may provide a cause of action for conduct that is not specifically listed in that section or any other provision of FDCPA. However, Plaintiffs' Complaint is deficient in that it does not identify any misconduct beyond that which Plaintiffs assert violate other provisions of the FDCPA. *See Tsenes v. Trans-Cont'l Credit and Collection Corp.*, 892 F. Supp. 461, 466 (E.D.N.Y. 1995) ("[T]he Complaint is devoid of support for the contention that the defendant engaged in practices that were 'unfair' or 'unconscionable' within the meaning of the section; all the allegations in the Complaint support claims asserted under either §§ 1692g or 1692e."). "As such, [Plaintiffs have] failed to state a cause of action under § 1692f, and the [D]efendant's motion should be granted to that extent."[33] *Id.*

E.  Whether NCO Complied With the § 1692e(11) Requirements

NCO also seeks dismissal of Count Two, alleging violations of § 1692e(11). "[Section] 1692e provides a broad prohibition on false or misleading statements. . . .  The section lists a variety of misleading tactics, but notes that the list is not exhaustive." *Forman v. Acad. Collection Serv., Inc.*, No. 03 Civ. 1124, 2005 WL 736220, at *3 (S.D.N.Y. Mar. 30, 2005). At issue in this case is the specific provision requiring a debt collector to disclose certain

---

[33] Plaintiffs may seek leave to amend and add specific allegations. *See Tsenes*, 892 F. Supp. at 466 (granting plaintiff leave to amend to include any specific § 1692f allegations).

information:

> The failure to disclose in the initial written communication with the consumer
> and, in addition, if the initial communication with the consumer is oral, in that
> initial oral communication, that the debt collector is attempting to collect a debt
> and that any information obtained will be used for that purpose, and the failure to
> disclose in subsequent communications that the communication is from a debt
> collector, except that this paragraph shall not apply to a formal pleading made in
> connection with a legal action.

15 U.S.C. § 1692e(11).  Here, the allegations in the Amended Complaint are limited to the

"subsequent communications" (Am. Compl. ¶ 80) — that is, communications after the initial

January 1 Letter.  As the plain language of the statute makes clear, § 1692e(11), provides that "in

subsequent communications with the consumer the debt collector need only state that the

communication is from a debt collector."[34]  *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 400 n.9

---

[34] Section 1692e(11) was amended by Public Law 104-208, effective September 30, 1996.
Prior to the 1996 Amendment, this provision provided:

> Except as otherwise provided for communications to acquire location information
> under section 1692b of this title, the failure to disclose clearly in all
> communications made to collect a debt or to obtain information about a consumer,
> that the debt collector is attempting to collect a debt and that any information
> obtained will be used for that purpose.

15 U.S.C. § 1692e (prior to 1996 amendment); *see also Ignatowski v. GC Services*, 3 F. Supp. 2d
187, 189 n.3 (D. Conn. 1998).  Thus, "[p]rior to the 1996 amendment, subsection 11 directed
debt collectors to make two disclosures in communications with debtors:  '[1] that the debt
collector is attempting to collect a debt ["notice" disclosure] and [2] that any information will be
used for that purpose ["warning" disclosure].'"  *Epps v. Etan Industries, Inc.*, No. 97 Civ. 8770,
1998 WL 851488, at *6 (N.D. Ill. Dec. 1, 1998) (quoting 15 U.S.C. § 1692e(11)).  The Second
Circuit interpreted this requirement as applying to both initial and follow-up conversations.  *See
Pipiles*, 886 F.2d at 26-27.
    "[I]t is apparent that Congress, in amending subsection 11, lessened the burden on debt
collectors by requiring them to make only the 'notice' disclosure in subsequent communications
with the debtor, and dropping the 'warning' disclosure."  *Epps*, 1998 WL 851488, at *8 (citing
Scott Burnham, *What Attorneys Should Know About The Fair Debt Collection Practices Act*, 59
Mont. L. Rev. 179 (Summer 1998)).

(6th Cir. 1998).

      The Second Circuit has held that "there simply is no requirement that the letter quote verbatim the language of the statute."  *Emanuel v. Am. Credit Exch.*, 870 F.2d 805, 808 (2d Cir. 1989); *see also Forman*, 2005 WL 736220, at *5 ("While [the] letter does not track the language of the statute verbatim, it is not required to as long as the warning comes across."); *Cavallaro*, 933 F. Supp. at 1156 ("In order to comport with the FDCPA, the notice does not have to quote verbatim the language of § 1692e(11).") (citing *Emanuel*, 870 F.2d at 808).  In fact, even Plaintiffs' counsel acknowledges that "I don't believe that there are magic words that you are absolutely, unequivocally obligated to say."  (Tr. 37)

      In determining whether there is a violation of § 1692e, courts apply the least sophisticated consumer test.  *Clomon*, 988 F.2d at 1318; *see also Forman*, 2005 WL 736220, at *3, *5 (applying least sophisticated consumer test to issue of whether violation of § 1692e(11) occurred).  However, the courts appear to agree that to comply with § 1692e(11), the debt collector must "clearly" be identified in the communication to the debtor.  *See Epps*, 1998 WL 851488, at *8 ("[A] debt collector satisfies subsection 11's notice requirement as long as it is clear from the subsequent letter that the sender is a debt collector.").

      NCO seeks to dismiss Count Two with respect to both the (1) January 18 Pre-Recorded Message and the (2) January 26 Conversation.  The Court concludes that dismissal is appropriate as to the January 26 Conversation, but not as to the January 18 Pre-Recorded Message.

      1.  January 18 Pre-Recorded Message

      Apart from arguing that the January 18 Pre-Recorded Message is not a "communication," NCO's brief does not advance any argument in support of the claim that the January 18 Pre-

Recorded Message complies with the disclosure requirements in § 1692e(11).  (NCO Mem. 6-7)

The Court concludes above that the January 18 Pre-Recorded Message is properly considered a

"communication" within the meaning of the FDCPA.  Moreover, to the extent NCO's argument

can be construed as maintaining that the January 18 Pre-Recorded Message complied with the

disclosure requirements, the Court rejects this argument.

The issue is whether the identification of the debt collection agency by name — "NCO

Financial Systems" — is sufficient to fulfill the requirement of disclosure that "the

communication is from a debt collector."  15 U.S.C. § 1692e(11).  The Court notes that, other

than the name "NCO Financial Systems," the January 18 Pre-Recorded Message contains no

other suggestion or clue that the correspondence is from a debt collector.  Put another way, this is

not a case where the fact that the communication is from a debt collector would be apparent even

to the least sophisticated consumer.  *Compare Epps*, 1998 WL 851488, at *9 (holding that where

letter indicated "this is an attempt to collect a debt and any information obtained will be used for

that purpose," and that "it is imperative that you immediately forward the past due balance," the

letter would not confuse an unsophisticated consumer about the author's status as a debt

collector); *Ross v. Commercial Fin. Servs., Inc.*, 31 F. Supp. 2d 1077, 1079-80 (N.D. Ill. 1999)

(holding that letter, which disclosed that debt collector was a "different kind of debt collection

company," satisfied § 1692e(11), even though it did not use exact term "debt collector").

Rather, there is nothing in the context of the January 18 Pre-Recorded Message that

would clearly inform a consumer that s/he is speaking to a debt collector, or, for that matter, that

the subject of the "business matter" requiring "immediate attention" is a debt.  Instead, a

consumer would have to, upon hearing the message, recall that it previously received mail from a

41

debt collection agency by the name of "NCO Financial Systems."[35]  Such a burden on the consumer is unreasonable.  The least sophisticated consumer, who may receive voluminous messages and calls, could easily be confused about the identify of "NCO Financial Systems," particularly given the vague reference in the message to "a personal business matter that requires your immediate attention."  *See Irwin v. Mascott*, 112 F. Supp. 2d 937, 954 (N.D. Cal. 2000) (holding that subsequent letter from debt collector violated § 1692e(11) because the "text advises ambiguously, 'This may have been sent to you by a collection agency'").  An alternative view of § 1692e(11) would eviscerate the statute's protections in subsequent communications, placing the burden on the consumer to recall the first communication and draw the connection to the second communication.  Accordingly, the Court denies the Motion to Dismiss Count Two as to the January 18 Pre-Recorded Message.

### 2.  January 26 Conversation

NCO further argues that "[t]o the extent Foti's § 1692e(11) claim is premised on the subsequent [January 26 Conversation] . . . it should also be dismissed."  (NCO Mem. 7) Plaintiffs do not even address this argument in their brief.

It is true that in the January 26 Conversation, the NCO representative never explicitly stated that "this a debt collector."  However, after identifying that Foti was the caller, the NCO agent stated that NCO was "calling in regard to . . . two outstanding Columbia House accounts, one's for thirty eight dollars and thirteen cents and the other is for seventy eight dollars and seventy five cents.  They've both been sent here into collections by Columbia House."  (Am.

---

[35] The name "NCO Financial Systems" appeared only in the upper right hand corner of the letter head, and the address portion of the payment return form (bottom right corner) of the January 1 Letter.  (Am. Compl. Ex. A)

Compl. ¶ 31, Ex. C)   This statement is unlikely to confuse even the least sophisticated consumer — rather, it is clear that the call is in reference to "*outstanding* . . . accounts . . . [that have] been sent *here into collections*."  (Am. Compl. ¶ 31, Ex. C)  *See Degonzague v. Weiss, Neuren & Neuren*, 89 F. Supp. 2d 282, 285 (N.D.N.Y. 2000) (holding no violation of § 1692e(11) where letter stated:  "The above-captioned matter has been referred to this office for immediate attention by People's Bank *in an attempt to collect a debt*.  Any information obtained will be used for that purpose.") (emphasis added in *Degonzague*).  Thus, "when [listening to the conversation] in its entirety, the least sophisticated consumer would understand the warning message."[36]  *Forman*, 2005 WL 736220, at *5.  Accordingly, the Motion to Dismiss is granted with respect to the January 26 Conversation.

---

[36] At argument, NCO maintains that "[i]f you listen to the tape, the [agent] was trying to [provide the disclosure] and [Foti] cut her off and she didn't get to finish the sentence."  (Tr. 39) There seems to be some support for this — as the NCO agent begins to explain "what we are calling in regards to," she is interrupted by Foti asking when she called.  The Court need not reach this issue given that NCO's disclosure satisfied its obligations under the FDCPA.

III. Conclusion

For the reasons outlined above, the Motion to Dismiss Count One is GRANTED as to the January 18 Pre-Recorded Message, but DENIED as to the January 26 Conversation. The Motion to Dismiss Count Two is DENIED as to the January 18 Pre-Recorded Message, but GRANTED as to the January 26 Conversation.

SO ORDERED.

Dated:      March 25, 2006
            New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

44

SERVICE LIST

Michael M. Cohen, Esq.
Law Offices of Michael M. Cohen
275 Walton Street
Englewood, NJ 07631
(201) 227-0881
*Counsel for Plaintiffs*

Yitzchak E. Cohen, Esq.
Law Offices of Yitzchak E. Cohen
545 West 236th St., 6th Floor
Riverdale, NY 10463
(718) 432-0134
*Counsel for Plaintiffs*

David Israel
Sessions, Fishman & Nathan, LLP
201 St. Charles Ave., Suite 3500
New Orleans, LA 70170
(504) 582-1500
*Counsel for Defendant*

Kevin Barry McHugh
Fiedelman Garfinkel & Lesman
110 William Street
New York, NY 10038
(212) 809-8000
*Counsel for Defendant*