UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

PAUL S. FOTI, ZOVINAR ASHJIAN, and CHRIS ZEBRO, individually and on behalf of all others similarly situated,

Plaintiffs,

-v-

NCO FINANCIAL SYSTEMS, INC.,

Defendant.

---------------------------------------------------------------X

Case No. 04 Civ. 00707

**MEMORANDUM AND ORDER**

RICHARD J. SULLIVAN, District Judge:

This Memorandum and Order considers the joint petition of named plaintiffs and defendant for final approval of a proposed settlement in a Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., class action lawsuit. The Court also considers the application of plaintiffs' prior and current counsel for an award of attorneys' fees. The Court has read and considered the Agreement and record. All capitalized terms used herein have the meanings defined herein and/or in the Agreement. For the reasons that follow, the Court (1) grants class certification to the settling plaintiffs, (2) approves the settlement, (3) awards attorneys' fees in the amount of $137,000, and (4) approves incentive payments to lead plaintiffs.

## I. Background

On January 29, 2004, the above-captioned class action lawsuit (hereinafter referred to as the "Lawsuit") was filed against defendant, NCO Financial Systems, Inc. (hereinafter referred to as "NCO"), asserting class claims under the Fair Debt Collection Practices Act (hereinafter referred to as the "FDCPA"), 15 U.S.C. § 1692 *et seq.*

On June 1, 2004, the Lawsuit was amended by adding additional FDCPA class claims

and plaintiffs. In the amended complaint, Paul S. Foti, Zovinar Ashjian, and Chris Zebro (hereinafter referred to as "Plaintiffs" or "Class Representatives") asserted three counts alleging various FDCPA violations. The Lawsuit involved a January 18, 2004 pre-recorded message left on Plaintiff Foti's answering machine, wherein NCO failed to identify itself as a debt collector (hereinafter referred to as the "January 18 Pre-Recorded Message"), and a January 26, 2004 telephone conversation between Plaintiff Foti and NCO, which occurred during the 30-day validation period (hereinafter referred to as the "January 26 Conversation").

In Count One, Plaintiffs alleged that the January 18 Pre-Recorded Message and January 26 Conversation overshadowed NCO's initial written notice, violating § 1692g (setting forth rule regarding debt validation), § 1692e(10) (prohibiting false or deceptive debt collection practices), and § 1692f (prohibiting unfair or unconscionable debt collection practices). In Count Two, Plaintiffs alleged that NCO failed to identify itself as a debt collector in the January 18 Pre-Recorded Message and January 26 Conversation, violating § 1692e(11) (requiring debt collector to disclose status as debt collector in "communication" to debtor) and § 1692f (prohibiting unfair or unconscionable debt collection practices). In Count Three, Plaintiffs alleged that NCO failed to honor their request to cease and desist communication with them, violating § 1692c(c) (setting forth circumstances under which a debt collector must cease communication with debtor), § 1692d (prohibiting harassment, oppression, and abuse), and § 1692f (prohibiting unfair or unconscionable debt collection practices).

On September 3, 2004, NCO filed a motion to dismiss Counts One and Two, which the Court granted in part and denied in part on March 28, 2006. Following the Court's ruling, the remaining claims in Count One were the § 1692g and § 1692e(10) claims relating to the January

26 Conversation; the remaining claim in Count Two was the § 1692e(11) claim relating to the January 18 Pre-Recorded Message; and the remaining claims in Count Three were the § 1692c(c), § 1692d, and § 1692f claims relating to, *inter alia*, the alleged failure to cease and desist communication.

NCO has denied any and all liability alleged in the Lawsuit.

On September 4, 2007, this action was reassigned from the Honorable Kenneth M. Karas, District Judge, to the undersigned.

On October 29, 2007, after extensive arms-length negotiations, discovery, motion practice, mediation, and two earlier proposed settlements, the Parties entered into a Second Amended Class Action Settlement Agreement (hereinafter referred to as the "Agreement"), which is subject to review under Federal Rule of Civil Procedure 23. As part of the above settlement, Plaintiffs abandoned their individual claims in Counts One and Three. Further, NCO agreed to a one-year Stipulation and Order for Permanent Injunction (hereinafter referred to as the "Stipulated Injunction").

On December 10, 2007, the Court entered an Order of Preliminary Approval of Class Action Settlement (hereinafter referred to as the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Court dismissed the claims in Counts One and Three with prejudice and, under Federal Rule of Civil Procedure 23(b)(2), preliminarily certified the proposed class relating to the claims in Count Two. Because the proposed class was preliminarily certified under Rule 23(b)(2) and the settlement provided only injunctive relief, the Court did not require individualized notice to class members. *See, e.g.*, *Ives v. W.T. Grant Co.*, 522 F.2d 749, 764 (2d Cir. 1975); *DeMarco v. National Collector's Mint, Inc.*, 229 F.R.D. 73, 81

(S.D.N.Y. 2005). The Court also set the Fairness Hearing for January 16, 2008, at 10:00 A.M.

The Fairness Hearing was convened as scheduled. No objectors appeared. At the Fairness Hearing, former and present counsel for Plaintiffs informed the Court that they had settled their dispute over the allocation of attorneys' fees, and that the agreed-upon amount of attorneys' fees was $137,000, rather than the originally proposed $125,000. The additional $12,000 represents the costs of reviewing, on a monthly basis for twelve months, NCO's compliance with the injunction. The settlement between current and former counsel is reflected in a separate order of the Court. The Parties now request final certification of a Federal Rule of Civil Procedure 23(b)(2) settlement class and final approval of the proposed class action settlement relating to Count Two.

## II. Discussion

### A. Certification of the Settlement Class

The Agreement contemplates certification of the settlement class. The proposed class is defined as "All persons who received a telephone communication from NCO between January 29, 2000 and December 10, 2007, *i.e.*, the day the Order of Preliminary Approval of Class Action Settlement was entered, wherein NCO failed to (i) identify itself as a "debt collector" or "bill collector" and/or (ii) communicate the "mini-Miranda" required by 15 U.S.C. § 1692e(11) of the Fair Debt Collection Practices Act, or a similar state law."

"Before certification is proper for any purpose — settlement, litigation, or otherwise — a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank, AG*, 443 F.3d 253, 270 (2d Cir. 2006).

Federal Rule of Civil Procedure 23(a) provides, in relevant part:

> One or more members of a class may sue . . . as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Notwithstanding the parties' willingness to stipulate to the factual requisites necessary for the certification of the class for settlement purposes, "'[t]he party seeking certification has the burden of demonstrating that all of the class certification criteria are met,'" *Karvaly v. eBay*, 245 F.R.D. 71, 78 (E.D.N.Y. 2007) (quoting *In re Medical X-Ray Film Antitrust Litig.*, No. 93-CV-5904, 1997 WL 33320580, at *2 (E.D.N.Y. Dec. 26, 1997)), and the Court bears an independent responsibility to "make a determination that every Rule 23 requirement is met before certifying a class. . . ." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006), *reh'g denied*, 483 F.3d 70 (2d Cir. 2007). That observation is consistent with the Supreme Court's admonition that Rule 23's "[s]ubdivisions (a) and (b) focus court attention on whether a proposed class has sufficient unity so that absent class members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed." *Amchem Prods. v. Windsor*, 521 U.S. 591, 621 (1997).

1. Rule 23(a) Requirements

Rule 23(a) lays out four prerequisites to maintaining a class action. The Court considers each in turn and incorporates by reference findings made on the record at the Fairness Hearing and in the Preliminary Approval Order.

a. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." That requirement is easily met here. The lawsuit involves a business practice

that was at one time the industry standard. The proposed class has millions of members. Joinder of all members is impracticable.

b. Commonality

Rule 23(a)(2) requires that the court determine if there are questions of law or fact common to the class. "'The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact.'" *Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (per curiam)). Here, the class claims stem from the same alleged conduct. Namely, the class is defined as those individuals for whom NCO failed to identify itself as a debt collector or bill collector on the answering machines or telephone or voice message devices of consumers. The class is thus defined as individuals who share a common experience that forms the basis of the lawsuit. Accordingly, the commonality requirement is met.

c. Typicality

"Typicality 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Cent. States Southeast & Southwest Areas Health & Welfare Fund*, 504 F.3d at 245 (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)).

Plaintiffs Foti, Ashjian, and Zebro have identical claims to the claims of the class members. The typicality requirement is met here.

d. Fair and Adequate Representation

"Adequacy of representation means that the class representatives 'will fairly and adequately protect the interests of the class.'" *Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d at 245 (quoting *Denney*, 443 F.3d at 267 (internal quotation marks omitted)). Adequacy of representation is measured in two ways. First, the court considers whether class counsel is qualified, experienced, and generally able to conduct the litigation. Second, the court considers whether the class members have interests that are "antagonistic" to one another. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

The record shows here that Class Counsel is qualified, experienced, and generally able to conduct this litigation. Exhibit 6 to the motion for preliminary approval lays out the experience of present counsel for Plaintiffs, which includes expertise in the Fair Debt Collection Practices Act as well as multiple class action litigations. The record further demonstrates that Plaintiffs Foti, Ashjian, and Zebro have no antagonistic or conflicting interests with the putative class members. Because the claims of the putative class are identical to the claims of the Class Representatives, this prong is satisfied.

2. Rule 23(b)(2) Requirements

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. The parties here seek certification of a Rule 23(b)(2) injunction settlement class. A class may be certified under this rule when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). A district court may allow (b)(2) certification if it finds that "(1) the positive weight or value to the plaintiffs of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy." *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d at 164 (alterations omitted).

The settlement agreement in this case contemplates only injunctive relief. Furthermore, the action has always been "primarily injunctive in nature." (Am. Compl. ¶ 60.) The monetary damages would be so *de minimis* that the value of the injunction to the plaintiffs clearly outweighs any potential financial recompense. Finally, the court finds that class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy.

B. Approval of Final Settlement

Federal Rule of Civil Procedure 23(e) governs the settlement of class actions and requires court approval before a settlement is executed. Adequate notice of the proposed settlement must be provided and the proposed settlement must be the subject of a fairness hearing. *See* Fed. R. Civ. P. 23(e)(1). In addition, a court may approve a settlement that is binding on a class only if it determines that the settlement is "fair, adequate, and reasonable" and not a "product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). This evaluation requires the court to consider both "the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

1. Adequacy of Notice

Because this class action is filed under Rule 23(b)(2), due process is satisfied without

individualized notice to prospective class members. *See, e.g.*, *Ives*, 522 F.2d at 764; *Laflamme v. Carpenters Local #370 Pension Plan*, 212 F.R.D. 448, 458-459 (N.D.N.Y. 2003); *DeMarco*, 229 F.R.D. at 81. Because the Agreement explicitly preserves the individual rights of class members to pursue statutory damages against the defendant, and because the relief in this Rule 23(b)(2) class action is injunctive in nature, notice was not required. Nevertheless, the Court notes that this case has been the subject of public attention and that several individuals, with counsel, sought to intervene on the matter. (Fairness Hr'g Tr. 17:8-18.) All intervention motions were withdrawn prior to this settlement. While these elements do not compromise notice in the traditional sense, they do highlight that there was widespread public awareness of this case.

2. Procedural Fairness

"A court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *D'Amato*, 236 F.3d at 85 (internal citations omitted). The negotiations leading to the Settlement were procedurally fair. At the Fairness Hearing, both prior and current Plaintiffs' counsel and counsel for defendants represented that the proposed settlement agreement was hard fought and negotiated at arms' length. (Tr. 10:10, 14:2, 14:7.) Plaintiffs' counsel is experienced in FDCPA litigation, and effectively represented the interests of the class. (Tr. 10:8-19.) While NCO forwarded $40,000 in attorneys' fees to Plaintiffs' counsel prior to the final approval of the settlement, that sum was forwarded after the settlement negotiations had concluded, and has been held in trust pending ultimate Court

approval of the settlement. (*See* Israel Letter of July 10, 2006.) Accordingly, this prepayment does not compromise the integrity of the negotiations or the procedural fairness of the settlement. *Cf. Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 741 F. Supp. 84, 86 (S.D.N.Y. 1990) (noting authorization of payment of expenses prior to the final approval of the settlement). Finally, no discovery was required in this action because defendants admitted to leaving the voice messages that violated the FDCPA and because all parties were aware of NCO's net worth from previous litigation. (Tr. 12:5-22.)

For these reasons, the Court finds that the process by which the parties negotiated the proposed settlement was fair and reasonable.

3. Substantive Fairness

Courts of the Second Circuit examine nine factors to determine whether a settlement is substantively fair and reasonable as required by Rule 23(e). The factors are "(1) the complexity, expense, and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]" *D'Amato*, 236 F.3d at 86. A court need not find that every factor militates in favor of a finding of fairness; rather, a court "considers the totality of these factors in light of the particular circumstances." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (internal quotations and citations omitted).

Application of the *D'Amato* factors leads the Court to the conclusion that the settlement agreement is fair and adequate to the class. The Court notes that the Settlement Agreement requires NCO to use best efforts to identify itself as a bill collector or as a debt collector in all telephone communications with a debtor, in compliance with the FDCPA. This injunctive relief is coupled with the preservation of the rights of individual class members to bring a claim for statutory damages. Accordingly, the Agreement obtains real benefits for the class as a whole without extinguishing any individual rights to seek damages.

Because the settlement was negotiated as a (b)(2) settlement, no class members were able to opt out. However, the Court notes that no one filed an objection or appeared at the Fairness Hearing to object to the Settlement Agreement. At least two objectors who had previously expressed concern at earlier versions of the proposed Settlement Agreement withdrew their objections upon review of the final Settlement Agreement. (Tr. 17:1.) In addition, there were risks in establishing both damages and liability. The uncertain legal grounds for the action, the potentially de minumus nature of the violation, and the defendant's potential legal defenses all posed a risk to the success of the class action, particularly through a potential trial. Moreover, at least one court in this Circuit has concluded that "violations of the FDCPA cannot serve as the basis for injunctive relief for private plaintiffs," *In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection Practices Act Litig.*, 208 F.R.D. 493, 503 (E.D.N.Y. 2002) (internal citations and quotations omitted), thus calling into question the ability of plaintiffs to prevail in their sought-after relief if they went to trial instead of settling this action.

Finally, to the extent that the *D'Amato* factors relating to the reasonableness of the settlement fund are relevant to an injunction-only settlement, the Court notes that the Settlement

does not preclude individual class members from seeking statutory damages. Attorneys for the Plaintiffs have represented that the value of the injunctive relief is at least a million dollars. (Tr. 23:10.) Based on NCO's prominence in the debt collection industry, and the burden it imposes on NCO's ability to collect debts, the Court finds that the value of the settlement agreement, particularly in light of NCO's net worth and in light of the best possible recovery, is very significant.

In sum, after considering the relevant factors, the Court finds that the Settlement is substantively fair and reasonable.

C. Attorneys' Fees

The settlement agreement contemplates attorneys' fees in the amount of $137,000. A federal district court has broad discretion to award attorneys' fees using either the lodestar method or by awarding a percentage of the total recovery. *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Under either method, the Court is guided by the following criteria: (1) the time and labor expended by counsel: (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *See Goldberger*, 209 F.3d at 50. While the trend in the Second Circuit thus has been to express the attorneys' fees as a percentage of the total settlement, rather than to use the "lodestar" method to arrive at a reasonable fee, *see Wal-Mart Stores v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005), such an analysis is more difficult in a case such as the instant action, where the settlement is not monetary in nature. In such a case, at least one court has determined that the "lodestar" method — otherwise known as the method of multiplying an attorney's reasonable hours by a

reasonable hourly rate for the services performed, so as to determine a "presumptively reasonable fee," *see Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 118-21 (2d Cir. 2007) — is the "'most useful starting point'" in determining an appropriate fee award, *Reade-Alvarez v. Eltman, Eltman and Cooper, P.C.*, No. CV-04-2195 (CPS), 2006 WL 3681138, at *8 (E.D.N.Y. Dec. 11, 2006) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Accordingly, the Court finds that the proposed amount of attorneys' fees is reasonable in two ways. First, the total amount was agreed upon by the parties, and reflects the value of the injunction to the class. Second, the reasonableness of the total amount is confirmed by the lodestar. *See Goldberger*, 209 F.3d at 47 (noting that the lodestar value acts as a cross-check).

1. The Agreed-Upon Amount Is Reasonable

First, an agreed-upon award of attorneys' fees and expenses is proper in a class action settlement, so long as the amount of the fee is reasonable under the circumstances. *See* Fed. R. Civ. P. 23(h) (providing that in a "certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement"). Indeed, courts have encouraged litigants to resolve fee issues by agreement, if possible. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007) (collecting cases.) This is particularly the case where the amount of attorneys' fees is in addition to and separate from defendant's settlement with the class. *See Local 56, United Food & Commercial Workers Union v. Campbell Soup Co.*, 954 F. Supp. 1000, 1005 (D.N.J. 1997) (granting class counsel maximum amount of fees agreed to by defendant under settlement agreement where class members retained all that the settlement provides and do not lose any negotiated benefits on account of the

attorneys' fees).

In the instant action, Defendant NCO has agreed to award Class Counsel a lump sum of attorneys' fees, subject to Court approval. This award is wholly separate and apart from the class settlement. The class settlement is not a monetary common fund, and the attorneys' fees will not come out of the pocket of class members. Finally, the Court notes that were the Court to reduce the agreed-upon amount of attorneys' fees, the only beneficiary would be NCO — not the class. To that effect, NCO, the potential beneficiary of a reduced amount of attorneys' fees, has agreed that the proposed amount of attorneys' fees is "a fair award." (Tr. 31:25.)

The Court finds that this agreed-upon amount of fees is reasonable in light of the value of the injunction obtained. Counsel represented to the Court at the Fairness Hearing that while they had not formally quantified the value of the settlement, they believed it to be worth millions of dollars. (Tr. 23:10.) Application of the *Goldberger* factors confirms the reasonableness of the agreed-upon fee award. Attorneys for the plaintiffs expended significant time and labor to the prosecution and settlement of this action; current counsel for Plaintiffs will continue to expend time and labor in monitoring NCO's compliance with the injunction and reviewing claims against NCO on a monthly basis. This was a complex and risky litigation, as demonstrated by the fact that two of the three counts were dismissed in pre-trial motion practice. Indeed, the plaintiff class considered the fact that even one of their claims survived a motion to dismiss as a significant victory. Counsels' work has been of high quality, as best evidenced by the results of this settlement. This litigation not only has resulted in an injunction against a widely used debt collection practice, but has also resolved important questions going to the legality of the practice under the FDCPA. Moreover, the settlement has achieved these goals without compromising the

individual rights of class members to seek statutory damages. Finally, public policy considerations fully support the requested fee. The type of litigation undertaken by class counsel here, which addresses important consumer concerns that would probably be ignored absent such class action lawsuits, should be encouraged.

2. Lodestar Analysis Confirms the Reasonableness of the Requested Fees

Second, the Court turns to the lodestar analysis as a cross-check of the Court's findings on the reasonableness of the fees. On July 23, 2007, Judge Karas, then presiding over this action, referred the question of attorneys' fees to the Honorable Debra C. Freeman, Magistrate Judge, to resolve a fee dispute between former and present counsel for Plaintiffs. Judge Freeman's report and recommendation was issued on January 15, 2008. Shortly thereafter, in an agreement dated January 31, 2008, former and present counsel for Plaintiffs settled their disagreement as to the allocation of fees between them. That settlement is reflected in a separate stipulation and order of the Court. Accordingly, to the extent that the Report and Recommendation recommends an allocation of fees between counsel, that dispute has become moot and is no longer before the Court. *See, e.g.*, *Hayden v. Feldman*, 159 F.R.D. 452, 453 (S.D.N.Y. 1995) (noting that since litigants settled after the report and recommendation was issued, the portion of the report and recommendation pertaining to them was moot). Nevertheless, in the interests of judicial economy, the Court refers to Judge Freeman's analysis of the lodestar to confirm the reasonableness of the proposed amount of attorneys' fees. Judge Freeman exhaustively scrutinized the contemporaneous time records submitted by both former and present counsel for Plaintiffs, and concluded that the lodestar analysis resulted in attorneys' fees of $87,290.30.

Courts have regularly recognized that in instances where a lodestar analysis is used,

counsel may be entitled to a "multiplier" of their lodestar rate to compensate them for the risk assumed by them, the quality of their work, and the result achieved by the class. *See In Re Veeco Instruments Inc. Sec. Litig.*, 05 MDL 01695, 2007 WL 4115808, at *2-3 (S.D.N.Y. Nov. 7, 2007). "Because counsel who rendered services were not being compensated for their work as it was being performed and because of the significant risk that they might never receive any compensation if the action was unsuccessful, courts have, when warranted, applied a multiplier to the lodestar to arrive at a fair contingent fee." *In re Prudential Sec. Ltd. Pshps. Litig.*, 985 F. Supp. 410, 414 (S.D.N.Y. 1997). The $137,000 fee being requested by Class Counsel, in comparison to their actual lodestar, represents a multiplier of 1.57. This multiplier is consistent with at least one similar case in the Second Circuit. *See, e.g.*, *Gross v. Wash. Mut. Bank, F.A.*, 2006 WL 318814, at *6 (E.D.N.Y. Feb. 9, 2006).

For the same reasons that the Court discussed in applying the Goldberger factors to the agreed-upon award, the application of the *Goldberger* factors here confirms the reasonableness of the requested multiplier. As previously discussed, this complex and novel litigation was not without risks. The class was ably represented by counsel, who secured a valuable settlement that will change NCO's debt collection practices in a tangible way, while preserving class members' ability to seek statutory damages. Finally, the Court reiterates that public policy considerations favor the application of a multiplier, for the same reasons discussed above. The Court therefore finds the multiplier reasonable.

For all of these reasons, and in the absence of any objection, the Court finds that the requested amount of $137,000 in attorneys' fees is justified.

D. <u>Incentive Payments to Lead Plaintiffs</u>

The settlement agreement awards the representative plaintiffs $1500 in recognition of their services as Class Representatives and in full settlement of their individual FDCPA claims against NCO. This award is modest—and indeed, is lower than the range of awards made in favor of class representatives in similar cases. *See, e.g.*, *Gross*, 2006 WL 318814, at *6 (awarding $5000 to lead plaintiffs in FDCPA litigation). Therefore, the court approves the incentive award for the named plaintiffs.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. The Court has jurisdiction over the subject matter of the Lawsuit and over all settling parties hereto.

2. Pursuant to Federal Rule of Civil Procedure 23(b)(2), the Lawsuit is hereby finally certified, for settlement purposes only, as a class action on behalf of the following National Class Members with respect to Count Two, as:

> All persons who received a telephone communication from NCO between January 29, 2000 and December 10, 2007, *i.e.*, the day the Order of Preliminary Approval of Class Action Settlement was entered, wherein NCO failed to (i) identify itself as a "debt collector" or "bill collector" and/or (ii) communicate the "mini-Miranda" required by 15 U.S.C. § 1692e(11) of the Fair Debt Collection Practices Act, or a similar state law.

3. Pursuant to Federal Rule of Civil Procedure 23, the Court finally certifies Plaintiffs Paul S. Foti, Zovinar Ashjian, and Chris Zebro as the Class Representatives and Robert L. Arleo and Gary M. Reing as Class Counsel.

4. The Court finds that the Lawsuit satisfies the applicable prerequisites for class action treatment under Federal Rule of Civil Procedure 23, because:

A. The National Class Members are so numerous that joinder of all of them in the

Lawsuit is impracticable;

B. There are questions of law and fact common to the National Class Members, which predominate over any individual questions;

C. The claims of the Plaintiffs are typical of the claims of the National Class Members;

D. The Plaintiffs and Class Counsel have fairly and adequately represented and protected the interests of all of the National Class Members; and,

E. A class action is superior to other available methods for a fair and efficient adjudication of this controversy.

5. The Court held a Fairness Hearing on January 16, 2008 to hear any objections to the proposed settlement. No one objected to the settlement. Even though there were no objections, the Court nevertheless has the responsibility to ensure that the settlement is fair, reasonable, and adequate. "The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato*, 236 F.3d at 85. For the reasons stated on the record at the Fairness Hearing as well as for the reasons noted herein, the Court finds that the settlement is fundamentally fair, reasonable, and adequate, especially in light of the benefits to the class members; the preservation of the rights of individual class members; the strength of the Plaintiffs' case; the complexity, expense, and probable duration of further litigation; the risk and delay inherent in possible appeals; the risk of collecting any judgment obtained on behalf of the national class; and, the limited amount of any potential total recovery for the class.

6. The Court finally approves the Stipulated Injunction. The Stipulated Injunction will be

deemed entered upon entry of this order.

7. Pursuant to the Stipulated Injunction attached hereto as Exhibit A, NCO will be ordered to use its best efforts to ensure that it identifies itself as a "debt collector" and/or "bill collector" in all telephone communications to a debtor subject to the FDCPA. Each month after the Stipulated Injunction is entered for a period of one year, counsel for NCO shall issue a letter to Class Counsel identifying all lawsuits filed against NCO during that month alleging the same class claims being settled in this matter. Further, each quarter after the Stipulated Injunction is entered for a period of one year, counsel for NCO shall issue a draft report to Class Counsel detailing how NCO has complied with the Stipulated Injunction. Counsel for NCO and Class Counsel shall confer via telephone after issuance of each draft report to discuss NCO's compliance and finalize the injunction report. The Parties will submit a joint motion to the Court to extinguish the Stipulated Injunction after the one year period is over.

8. The Agreement, which is attached hereto as Exhibit B and shall be deemed incorporated herein, and the proposed settlement are approved and shall be consummated in accordance with the terms and provisions thereof, except as amended by any order issued by this Court and except as the total amount of attorneys' fees will be $137,000 instead of $125,000. The material terms of the Agreement include, but are not limited to, the following:

A. NCO must pay Plaintiffs Foti, Ashjian, and Zebro each $1,500 for their services as the Class Representatives and for the individual settlement of their FDCPA claims; and

B. NCO must comply with the aforementioned Stipulated Injunction.

C. The individual class members will have the right to file only a separate individual

action against any of the Released Parties for only money damages relating to the Released Claims.

9. The Court finds that the amount of attorneys' fees is reasonable. For the reasons stated in this opinion and at the Fairness Hearing, the Court approves the $137,000 agreed-upon amount of attorneys' fees, costs, and expenses. In a separate order, the Court will address how the $137,000 award will be disbursed between present and former Class Counsel.

10. The Class Representatives, National Class Members, and their successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually or as a class, or in any other capacity, any of the Released Claims against any of the Released Parties, as set forth in the Agreement. Pursuant to the release contained in the Agreement, the Released Claims are compromised, settled, released, discharged, and dismissed with prejudice by virtue of these proceedings and this Final Order and Judgment.

11. The Lawsuit is hereby dismissed with prejudice in all respects, except for issues relating to the disbursement of the $137,000 in attorneys' fees, costs, and expenses.

12. This Final Order and Judgment is not, and shall not be construed as, an admission by NCO of any liability or wrongdoing in this or in any other proceeding.

13. The Court hereby restrains and enjoins all persons who have appeared in these proceedings and any other person from taking any actions interfering or inconsistent with this Final Order and Judgment and the Agreement that the Court hereby approves.

14. The Court hereby retains continuing and exclusive jurisdiction over the Parties and all matters relating to the Lawsuit and/or Agreement, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement, Agreement, class

membership, and Final Order and Judgment.

IT IS SO ORDERED.

DATED: Feb. 19, 2008
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

PAUL S. FOTI, ZOVINAR ASHJIAN, and CHRIS ZEBRO, individually and on behalf of all others similarly situated,

Plaintiffs,

-v-

NCO FINANCIAL SYSTEMS, INC.,

Defendant.

----------------------------------------------------------------X

Case No. 04-cv-00707

**SECOND AMENDED CLASS ACTION SETTLEMENT AGREEMENT**

This Second Amended Class Action Settlement Agreement (hereinafter referred to as the "Agreement"), dated October 29, 2006, is entered into between Paul S. Foti, Zovinar Ashjian, and Chris Zebro (hereinafter referred to as "Plaintiffs" or "Class Representatives"), individually and on behalf of the "National Class Members" (as defined below), and defendant, NCO Financial Systems, Inc. (hereinafter referred to as "NCO"). This Agreement is intended by NCO and Plaintiffs, on behalf of themselves and the "National Class Members," (hereinafter collectively referred to as the "Parties") to fully, finally, and forever resolve, discharge, and settle the "Released Claims" (as defined below), upon and subject to the terms and conditions contained herein.

WITNESSETH:

WHEREAS, on January 29, 2004, Plaintiff Foti filed a class action complaint against NCO, asserting class claims under the Fair Debt Collection Practices Act (hereinafter referred to as the "FDCPA"), 15 U.S.C. § 1692, *et seq.* (hereinafter referred to as the "Lawsuit");





WHEREAS, on June 1, 2004, Plaintiff Foti amended the Lawsuit by adding additional FDCPA class claims and Plaintiffs Ashjian and Zebro. Per the amended complaint, Plaintiffs asserted 3 Counts alleging various FDCPA violations;

WHEREAS, the Parties stipulate upon the following predicate facts:

1. The Lawsuit involved a January 18, 2004 pre-recorded message left on Plaintiff Foti's answering machine, wherein NCO failed to identify itself as a debt collector (hereinafter referred to as the "January 18 Pre-Recorded Message");

2. It is undisputed that NCO had a practice of sometimes leaving messages similar to the January 18 Pre-Recorded Message on the answering machines, or telephone or voice message devices, of others;

3. The Lawsuit also involved a January 26, 2004 telephone conversation between Plaintiff Foti and NCO, which occurred during the 30-day validation period (hereinafter referred to as the "January 26 Conversation");

4. In Count 1, Plaintiffs alleged that the January 18 Pre-Recorded Message and January 26 Conversation overshadowed NCO's initial written notice;

5. Plaintiffs asserted class claims under §§ 1692g (setting forth rule regarding debt validation), 1692e(10) (prohibiting false or deceptive debt collection practices), and 1692f (prohibiting unfair or unconscionable debt

collection practices) for the alleged overshadowing calls in Count 1;

6. In Count 2, Plaintiffs alleged that NCO failed to identify itself as a debt collector in the January 18 Pre-Recorded Message and January 26 Conversation;

7. Plaintiffs asserted class claims under §§ 1692e(11) (requiring debt collector to disclose status as debt collector in "communication" to debtor) and 1692f (prohibiting unfair or unconscionable debt collection practices) for the alleged failure to identify claim in Count 2;

8. In Count 3, Plaintiffs alleged that NCO failed to honor their requests to cease and desist communication with them;

9. Plaintiffs asserted class claims under §§ 1692c(c) (setting forth circumstances under which a debt collector must cease communication with debtor), 1692d (prohibiting harassment, oppression, and abuse), and 1692f (prohibiting unfair or unconscionable debt collection practices) for the alleged failure to cease and desist communication claim in Count 3;

WHEREAS, the Parties stipulate upon the following predicate procedural history:

1. On September 3, 2004, NCO filed a partial motion to dismiss, seeking to dismiss Counts 1 and 2;

2. On March 28, 2006, the Court granted in part and denied in part NCO's motion. With respect to Count 1, the Court granted NCO's motion as to the January 18 Pre-Recorded Message, but denied the motion as to the

January 26 Conversation. With respect to Count 2, the Court granted NCO's motion as to the January 26 Conversation, but denied the motion as to the January 18 Pre-Recorded message;

3. Finding the Lawsuit contained no allegations specifically supporting the § 1692f claim, the Court dismissed the § 1692f claim in Counts 1 and 2;

4. Following the Court's ruling, the remaining claims in Count 1 were the § 1692g and 1692e(10) claims relating to the January 26 Conversation; the remaining claim in Count 2 was the § 1692e(11) claim relating to the January 18 Pre-Recorded Message; and, the remaining claims in Count 3 were the § 1692c(c), 1692d, and 1692f claims relating to, *inter alia*, the alleged failure to cease and desist communication;

WHEREAS, NCO continues to deny any and all liability alleged in the Lawsuit;

WHEREAS, the Parties wish to avoid the expense and uncertainty of litigation;

WHEREAS, the Parties believe that settlement by way of this Agreement is in its/his/her best interest;

WHEREAS, through this Agreement, Plaintiffs Foti, Ashjian, and Zebro are foregoing their individual claims in Counts 1 and 3;

WHEREAS, counsel for the National Class Members have conducted an evaluation of the claims in Count 2 to determine how best to serve the interests of the National Class Members;

WHEREAS, counsel for the National Class Members believe, in view of the costs,

risks, and delays of continued litigation and appeals balanced against the benefits of settlement to the National Class Members, that the class settlement as provided in this Agreement relating to Count 2 is in the best interest of the National Class Members and is a fair, reasonable, and adequate resolution of the Lawsuit;

WHEREAS, prior to entering into this Agreement, counsel for the Parties engaged in extensive arms-length negotiations, discovery, motion practice, and mediation;

WHEREAS, the Parties desire and intend to seek court approval of the settlement of the Lawsuit as set forth in this Agreement and, upon court approval, to seek a Final Order and Judgment from the Court dismissing with prejudice the claims of the National Class Members as set forth herein;

WHEREAS, the Parties and their counsel agree to recommend approval of this Agreement to the Court;

WHEREAS, the Parties agree to undertake all steps necessary to effectuate the terms and purposes of this Agreement, to secure the Court's approval of same, and to oppose any appeals from any orders of final approval.

WHEREFORE, in consideration of the promises, representations, and warranties set forth, the Parties stipulate and agree:

1. DEFINITIONS – The following definitions shall apply to this Agreement:

A. "Effective Date" shall mean the first date after "Final Judgment Day" (as defined below).

B. "Final Judgment Day" shall mean the day upon which the Final Order and

Judgment becomes "Final." The Final Order and Judgment shall become "Final" upon the expiration of any available appeal period following entry of the Final Order and Judgment. If any appeal is filed from the Final Order and Judgment, then Final Judgment Day shall be the first date after the conclusion of all appeals, so long as the Final Order and Judgment is not reversed or vacated.

C. "National Class Members" shall mean all persons who received a telephone communication from NCO between January 29, 2000 and the day the Order of Preliminary Approval of Class Action Settlement is entered, wherein NCO failed to (i) identify itself as a "debt collector" or "bill collector" and/or (ii) communicate the "mini-Miranda" required by § 1692e(11) of the FDCPA, or a similar state law.

D. "Released Claims" shall mean, subject to the limitations stated in ¶¶ 16 and 20 below allowing individual monetary claims, any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, or foreign law right of action or of any other type or form (whether in contract, tort, or otherwise, including statutory, common law, property, and equitable claims), and also including all "Unknown Claims" (as defined below) which Plaintiffs or the National Class Members ever had, now have, or can have, or shall or may hereafter have, either individually, or as a member of a class, arising out of, based upon, or in any way relating to the conduct alleged in Count 2 of the Lawsuit, including, but not limited to:

i. Claims arising out of any of the facts, events, occurrences, acts or omissions mentioned or referred to in Count 2 of any of the complaints filed in the Lawsuit or other matters that were or could have been set forth, alleged, embraced, or otherwise referred to in the Lawsuit, or which could have been brought against the "Released Parties" (as defined below), relating to NCO's alleged failure in a telephone communication to (i) identify itself as a "debt collector" or "bill collector" and/or (ii) communicate the "mini-Miranda" required by § 1692e(11) of the FDCPA, or a similar state law; and

ii. Claims arising out of the prosecution or defense of the Lawsuit, including, but not limited to, claims related to the execution of this Agreement, such as claims of fraud in the inducement, negligent misrepresentation, or fraud, except that nothing herein releases any claim arising out of the violation or breach of this Agreement; and

iii. Claims arising out of or related to the notice of this settlement.

E. "Unknown Claims" shall mean, subject to the limitations stated in ¶¶ 16 and 20 below allowing individual monetary claims, any and all claims, any and all claims that Plaintiffs or any National Class Member does not know or even suspect to exist against any of the Released Parties relating to Count 2, which, if known, might have affected his or her decision regarding the settlement of the Lawsuit. Plaintiffs further acknowledge, and the National Class Members shall be deemed to acknowledge, that

they may hereafter discover facts in addition to or different from those that they now know or believe to be true concerning the subject matter of this release, but nevertheless fully, finally, and forever settle and release any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, may hereafter exist, or heretofore have existed based upon actions or conduct occurring on or before the date of this Agreement, without regard to subsequent discovery or existence of such different or additional facts concerning each of the Released Parties.

F. "Released Parties" shall mean NCO and each of its past, present, and future directors, officers, employees, partners, principals, agents, underwriters, insurers, co-insurers, re-insurers, shareholders, attorneys, and any related or affiliated company, including any parent, subsidiary, predecessor, or successor company, and all assigns, licensees, divisions, clients, joint ventures, and any entities directly or indirectly involved in the Lawsuit, including NCO Group, Inc., NCO Portfolio Management, Inc., and all of their subsidiary entities, and any other related NCO entity.

2. CLASS CERTIFICATION – Concurrent with seeking preliminary approval of the settlement, counsel for the Parties shall jointly seek certification, per Fed. R. Civ. P. 23(b)(2), of a national class composed of all persons who received a telephone communication from NCO between January 29, 2000 and the day the Order of Preliminary Approval of Class Action Settlement is entered, wherein NCO failed to (i) identify itself as a "debt collector" or "bill collector" and/or (ii) communicate the "mini-Miranda" required by § 1692e(11) of the FDCPA, or a similar state law.

3. CLASS REPRESENTATIVES AND CLASS COUNSEL APPOINTMENT – For settlement purposes, and subject to Court approval, Plaintiffs Foti, Ashjian, and Zebro are appointed as the Class Representatives for the National Class Members and Robert L. Arleo and Gary M. Reing are appointed as counsel for the National Class Members (hereinafter referred to as "Class Counsel").

4. ORDER OF PRELIMINARY APPROVAL – Within 10 business days after this Agreement is fully-executed, counsel for the Parties shall jointly request that the Court enter an Order of Preliminary Approval of Class Action Settlement in substantially the form attached as Exhibit A.

5. FINAL ORDER AND JUDGMENT – If the settlement is approved preliminarily by the Court, and all other conditions precedent to the settlement have been satisfied, counsel for the Parties shall jointly request that the Court enter a Final Order and Judgment in substantially the form attached as Exhibit B.

6. Upon entry of the Final Order and Judgment, the Parties expressly waive any and all rights to appeal any orders issued by the Court in connection with the Lawsuit, except issues concerning attorneys' fees and expenses pursuant to ¶¶ 23 to 25 of this Agreement.

7. Plaintiffs and Class Counsel agree that the execution of this Agreement, or any related documents, the certification of the national class, and any other act taken or court paper filed in furtherance of this Agreement shall not be used to urge that a "litigation class" pursuant to Fed. R. Civ. P. 23 is appropriate. In the event this settlement is not approved, NCO retains any and all rights to object to the maintenance of this action, or

any other action, as a class action and to contest this action, or any other action, on any other grounds.

8. ADMINISTRATION AND NOTIFICATION PROCESS – NCO, at its sole cost and expense, shall administer, or oversee the administration of, the settlement. Considering the Parties propose certification of a Fed. R. Civ. P. 23(b)(2) settlement class, notice to the National Class Members is unnecessary. Notice of the settlement to Plaintiffs shall constitute due and sufficient notice to the National Class Members.

9. REQUESTS FOR EXCLUSION AND OBJECTIONS – In compliance with Fed. R. Civ. P. 23(b)(2), the National Class Members will not be permitted to exclude themselves from the class.

10. Any National Class Member who intends to object to the fairness of the settlement must file a written objection with the Court within 30 days from the Court's entry of the Order of Preliminary Approval of Class Action Settlement. Further, any such National Class Member must, within the same time period, provide a copy of the written objection to Class Counsel and counsel for NCO.

11. In the written objection, the National Class Member must set forth his or her full name, address, and telephone number, along with a statement of the reasons for his or her objection and whether he or she intends to appear at the fairness hearing on his or her own behalf or through counsel.

12. Any National Class Member who does not file a valid and timely objection to the settlement shall be barred from seeking review of the settlement by appeal or otherwise.

13. When responding to any inquiry from a National Class Member, Plaintiffs and Class Counsel will confirm that they believe the settlement is fair and reasonable.

14. Subject to approval by the Court, a fairness hearing will be conducted regarding the settlement within 30 days from the Court's entry of the Order of Preliminary Approval of Class Action Settlement.

15. THE EFFECTIVE DATE – As defined in ¶ 1(A), the "Effective Date" shall be the first date after Final Judgment Day.

16. RELEASES – As of the Effective Date, Plaintiffs and the National Class Members fully, finally, and forever settle, release, and discharge the Released Parties from the Released Claims, and are forever barred and enjoined from asserting any of the Released Claims in any court or forum whatsoever, except that the National Class Members will have the right to file only a separate individual action against any of the Released Parties for only money damages relating to the Released Claims. Neither this Agreement, nor the settlement set forth herein, is intended to settle or release any of the National Class Members' individual claims for money damages. Further, this Agreement is not intended to create any new rights, or expand any existing rights, that any National Class Member may have against any Released Party under any state or federal law. For example, this Agreement does not restart the statute of limitations for any claim that any National Class Member may have against any Released Party under any state or federal law.

17. Upon execution of this Agreement, Plaintiffs fully, finally, and forever settle, release, and discharge the Released Parties from any and all claims that they may have

against the Released Parties, including, but not limited to, the Released Claims and any other claims that were asserted in the Lawsuit. This release includes the release of any claims asserted in the Lawsuit for money damages or injunctive relief.

18. Subject to the limitations set forth herein regarding the scope of the release, the provisions of any state, federal, municipal, local, or territorial law or statute providing in substance that releases shall not extend to claims, demands, injuries, or damages that are unknown or unsuspected to exist at the time a settlement agreement is executed and approved by a court are hereby expressly, knowingly, and voluntarily waived by the Parties. In particular, Plaintiffs expressly waive, and the National Class Members shall be deemed to have waived, any and all rights or benefits they may now have, or in the future may have, under § 1542 of the California Civil Code, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

19. SETTLEMENT CONSIDERATION – In consideration for the foregoing releases, the Parties agree to the following:

A. Stipulated Injunction – When seeking entry of the Final Order and Judgment, the Parties will jointly request that the Stipulation and Order for Permanent Injunction (hereinafter referred to as the "Stipulated Injunction"), attached as Exhibit C, be entered by the Court. Pursuant to the Stipulated Injunction, NCO will be ordered to

use its best efforts to ensure that it identifies itself as a "debt collector" and/or "bill collector" in all telephone communications to a debtor subject to the FDCPA. Each quarter after the Stipulated Injunction is entered for a period of 1 year, counsel for NCO shall issue a draft report to Class Counsel detailing how NCO has complied with the Stipulated Injunction. Counsel for NCO and Class Counsel shall confer via telephone after issuance of each draft report to discuss NCO's compliance and finalize the injunction report. The Parties will submit a joint motion to the Court to extinguish the Stipulated Injunction after the 1-year period is over.

B. Class Representative Fees – Within 10 business days after Final Judgment Day, NCO shall pay Plaintiffs Foti, Ashjian, and Zebro each $1,500 in recognition of their services as the Class Representatives and in full settlement of their FDCPA claims against the Released Parties.

20. COVENANT NOT TO SUE – Plaintiffs agree and covenant, and each National Class Member will be deemed to have agreed and covenanted, not to sue any Released Party with respect to any of the Released Claims, or otherwise to assist others in doing so, and agree to be forever barred and enjoined from doing so, in any court of law or equity, or any other forum. Notwithstanding the foregoing, as set forth in ¶ 16, the National Class Members will have the right to file only a separate individual action against any of the Released Parties for only money damages relating to the Released Claims.

21. TERMINATION – After completing a good faith negotiation, Class Counsel and NCO shall each have the right to terminate this Agreement by providing written notice to

the other within 7 days of:

A. The Court's refusal to enter the Order of Preliminary Approval of Class Action Settlement in substantially the form attached as Exhibit A;

B. The Court's refusal to approve the settlement following the fairness hearing; or

C. The Court's refusal to enter the Final Order and Judgment in substantially the form attached as Exhibit B.

22. If either Class Counsel or NCO terminates this Agreement as provided herein, the Agreement shall be of no force and effect and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if this Agreement had never been executed.

23. ATTORNEYS' FEES, COSTS, AND EXPENSES – Provided that the settlement is approved as set forth herein, Class Counsel shall receive a total of $125,000 in attorneys' fees, costs, and expenses. NCO or its insurer shall pay the attorneys' fees, costs, and expenses awarded within 30 days after the Court's order related to such fees, costs, and expenses becomes final (*i.e.*, non-appealable).

24. Upon payment of attorneys' fees, costs, and expenses to Class Counsel, neither NCO nor its insurer shall have any further obligation with respect to Class Counsel's fees, costs, and expenses, or the fees, costs, or expenses of any other attorney on behalf of Plaintiffs or any National Class Member.

25. The Parties and their counsel represent and agree that the consideration to be

provided to the National Class Members is not contingent on the attorneys' fees to be awarded. The allowance or disallowance by the Court of the agreed-upon amount of $125,000 in attorneys' fees, costs, and expenses may be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceedings relating to the fees, costs, or expenses owed Class Counsel, or any appeal from any order relating thereto, or reversal, or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the Final Order and Judgment approving this Agreement and the settlement of the Lawsuit.

26. PUBLICITY – The Parties and their counsel agree that they will not discuss the facts of the Lawsuit or terms of this Agreement with any media source, unless by order of the Court. Further, this confidentiality limitation does not apply to any disclosures required by court order, or in conjunction with perfecting this settlement.

27. MISCELLANEOUS PROVISIONS – The exhibits to this Agreement, Exhibits A through C, are an integral part of the settlement and are expressly incorporated herein as part of this Agreement.

28. This Agreement is for settlement purposes only. The Parties acknowledge that this Agreement is not an admission of wrongdoing, negligence, or liability by NCO. This Agreement shall not be offered or be admissible against NCO, or cited or referred to, in any action or proceeding, except in an action or proceeding brought to enforce its terms.

29. No representations, warranties, or inducements have been made to any of the

Parties, other than those representations, warranties, and covenants contained in this Agreement.

30. This Agreement contains the entire agreement between the Parties and supersedes any and all other agreements between the Parties, including any and all other mediation and settlement agreements. The terms of this Agreement are contractual.

31. This Agreement shall be interpreted in accordance with New York law.

32. Any dispute, challenge, or question relating to this Agreement shall be heard only by this Court.

33. The Parties shall request that the Court retain continuing and exclusive jurisdiction over the Parties to this Agreement, including the Plaintiffs and all National Class Members, and over the administration and enforcement of this Agreement.

34. This Agreement shall be binding upon and inure to the benefit of the Parties and their representatives, heirs, successors, and assigns.

35. In the event that any of the provisions of this Agreement are held invalid or unenforceable for any reason, such invalidity or unenforceability shall not affect other provisions of this Agreement if NCO and Class Counsel mutually elect to proceed as if the invalid or unenforceable provision had never been included in the Agreement.

36. This Agreement shall be deemed to have been drafted jointly by the Parties and, in construing and interpreting this Agreement, no provision of this Agreement shall be construed or interpreted against any party because such provision, or this Agreement as a whole, was purportedly prepared or requested by such party.

37. This Agreement may be signed in counterparts and the separate signature pages executed by the Parties and their counsel may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties and their duly authorized attorneys have caused this Agreement to be executed this 29th day of October 2007.

/s/ Paul S. Foti
Paul S. Foti, Plaintiff

/s/ Zovinar Ashjian
Zovinar Ashjian, Plaintiff

/s/ Chris Zebro
Chris Zebro, Plaintiff

/s/ Robert L. Arleo, Esq.
Robert L. Arleo, Esq. (NYB No. RLA 7506)
164 Sunset Park Road
Haines Falls, New York 12436
Phone: (518) 589-5264
Fax: (518) 751-1801

/s/ Gary M. Reing, Esq.
Gary M. Reing, Esq. (NYB No. GMR 0754)
521 Fifth Avenue, Suite 1703
New York, New York 10175
Phone: (914) 245-7609
Fax: (914) 245-7631

Attorneys for Plaintiffs,
Paul S. Foti, Zovinar Ashjian, and
Chris Zebro

/s/ David Israel, Esq.
David Israel, Esq. (LSB No. 7174)
Bryan C. Shartle, Esq. (LSB No. 27640)
SESSIONS, FISHMAN & NATHAN, L.L.P.
3850 North Causeway Blvd., Suite 1240
Metairie, Louisiana 70002-1752
Phone: (504) 828-3700
Fax: (504) 828-3737

Kevin B. McHugh, Esq. (NYB No. KM 5924)
FIEDELMAN, GARFINKEL & LESMAN
110 William Street
New York, New York 10038-3901
Phone: (212) 809-8000
Fax: (212) 344-8263

Attorneys for Defendant,
NCO Financial Systems, Inc.

H:\NCO\Foti, Paul (6947-18666)\Settlement Documents\Final Draft Second Amended Class Action Settlement Agreement.doc